JOHN W. PHARES v. CIRYLL M. KRHUT *et al.*

No. 15,104.    (91 Pac. 52.)

SYLLABUS BY THE COURT.

1. NEW TRIAL—*Misconduct of the Prevailing Party.* "Misconduct of the prevailing party" as ground for a new trial is not confined to something occurring at the trial. It may include acts amounting to misconduct which, though occurring before, operate at the trial.

2. ——— *Fraud In Drawing the Jury—Burden of Proving Prejudice.* Where, after a trial, evidence is produced which arouses well-grounded suspicion that the prevailing party may have exercised an unlawful and corrupt interference with the selection and drawing of the jury, it is the duty of the court promptly to set aside the verdict and order a new trial, without proof that the rights of the other party have been materially affected by such misconduct.

Phares v. Krhut.

3. ——— *Evidence of Misconduct.* The evidence in support of the motion for a new trial in this case upon the ground of misconduct of the prevailing party examined, and *held* sufficient to require the court to set the verdict aside and order another trial.

Error from Trego district court; JAMES H. REEDER, judge. Opinion filed July 5, 1907. Affirmed.

## STATEMENT.

DEFENDANTS in error brought this action against John W. Phares to recover $2000 damages for fraud and misrepresentation, claiming that he had acted as their agent in the sale of a section of land and fraudulently misrepresented to them that he had sold it for the sum of $8000 when in fact he received the sum of $9600, and had retained the difference as well as an agent's commission. Upon issues joined the case was tried to a jury and judgment rendered in favor of defendant. The trial court allowed a motion for a new trial and set aside the verdict, and it is to reverse that ruling of the court that plaintiff in error brings this proceeding.

At the time the case was tried John W. Phares was the county clerk of Trego county, and had filled that position for a number of years. The motion for a new trial included all the statutory grounds, but the ground relied upon was "misconduct of the prevailing party." Defendants in error charged that plaintiff in error, while county clerk, corruptly placed or caused to be placed in the jury-box six names not selected by the township trustees for jury service, and corruptly altered the jury-lists in his official custody in order to conceal the unauthorized placing of the names in the jury-box, and corruptly withdrew from the jury-box prior to the drawing of the jury in February, 1906, nineteen names; that all of these acts were for the purpose of securing the drawing of a jury favorable to himself in this and other jury cases pending in the court in which he was a party.

In support of the motion the testimony of a number of township trustees, and also other oral testimony and affidavits, was introduced, from which it appears that after the trustee of Collyer township had returned the 1905 jury-list from that township to plaintiff in error, who was then county clerk, the list was changed by some person without authority by the addition of eight names. It also appears from the same kind of testimony that the names of seven persons were added to the list of those eligible as jurors from Ogallah township, after the trustee had made his return. Among these added names was that of J. L. Arnold, who had not been selected for jury service by the trustee. The assessment roll for Riverside township showed the same kind of manipulation, eleven names having been added to the five names returned by the trustee.

The October term of the district court was the first term after the names were returned by the trustees. All the names were placed in the jury-box in September, 1905, in the presence of two justices and the sheriff, and twenty-four names were drawn from the jury-box for service as jurors for the October term. The next term of court was the March, 1906, term, when the cause was tried. On February 3, 1906, in the presence of the same justices and sheriff, twenty-four names were drawn from the jury-box for service at the March term. Among the names drawn at this time were J. L. Arnold, Otto Colberg, J. Walberg, E. Pugh, T. W. Johnson and S. Erickson, persons whose names were among those added to the list without the authority of the trustees. After this drawing, according to the testimony of the justices and the sheriff, the jury-box was found to be empty, although by adding the total number of names drawn out for the two terms of court there were nineteen names unaccounted for which should have remained in the box when the drawing closed. The officers who were present also testified that the slips containing the names drawn at this time were not the same slips which were

placed in the box in their presence in September, 1905,
but were made upon a different kind of paper. Among
those who served as jurors on the trial were three from
Riverside township who were not selected by the trus-
tee of that township and whose names were added to
the jury-list without his authority or knowledge.

F. F. Ziehman, who was the trustee of Collyer town-
ship, testified that he returned in his own handwriting
the names of sixteen persons as jurors, and that there
had been eight names added which were not in his
handwriting, and that he had not authorized any one
to add any names to the roll. He further testified that
while the motion for the new trial was pending plain-
tiff in error sent for him to come to the county clerk's
office and showed him the assessment roll with the ad-
ditional names and said that he wanted him to "recog-
nize this list." The witness informed him that he
could not do that. Continuing, the witness said: "He
[plaintiff in error] said if I could not recognize this
as my list he would make out a new book, if I would
recognize it."

J. C. Buchanan, trustee of Ogallah township, testi-
fied that seven names had been added to the list after
he had returned the names to the county clerk; that
he had a conversation with plaintiff in error while the
motion for a new trial was pending in which plaintiff
in error asked him if he had had any talk with the at-
torney for defendants in error, and, when informed by
the witness to the contrary, said to him: " 'If he comes
to you for anything, don't tell him anything until you
come on the stand.' I says, 'What do you want?' And
he says, 'I don't know; it is something about the
jury.' " He also testified that he had a conversation
with plaintiff in error when the motion for a new trial
was pending, as follows:

"He asked me if I had made an affidavit, and I told
him I had not, and he asked me if I would make an
affidavit to the effect that I did not know how many

16—76 KAN.

jurors I reported, and I told him I would not—I could not."

E. B. Hobbick, township assessor of Wa Keeney township in 1905, also testified that he returned to the county clerk the names of six persons eligible as jurors from the city of Wa Keeney, and that the assessment roll of the township showed nine names added without his authority.

Defendants in error were residents of Collyer township, which was one of the most populous townships in the county, and its trustee selected sixteen persons for jury service. It appears that no person from this township happened to be drawn or summoned on the jury for the March term.

J. L. Arnold, whose name was added to the jury-list from Ogallah township without the authority of the trustee, was a tenant on the farm of plaintiff in error.

Charles Ridgway, who was drawn as a juror, and whose name was one of those added to the list, but who did not serve, testified that before the trial took place he had a conversation with plaintiff in error in which the latter said: "'I think my land case will be tried, and if it is, and you sit on the jury, I wish you would do me all the good you can, because I am right.'"

The motion for a new trial was also supported by affidavits of defendants in error and their attorney showing that they had no knowledge or notice of the irregularities and misconduct with reference to the drawing of the jury at the time the case was tried, nor until about the time the motion for a new trial was filed. There was further testimony showing that plaintiff in error was a party in two other causes pending at the same term of court which were liable to be tried by juries and in which considerable amounts were involved.

There was no evidence offered by plaintiff in error in rebuttal.

*W. E. Saum,* and *John E. Hessin,* for plaintiff in error.

*Herman Long,* for defendants in error.

The opinion of the court was delivered by

PORTER, J.: It is claimed that the court erred in refusing to strike from the files the affidavits and in admitting oral evidence in support of the motion. This claim of error is based upon the contention that the "misconduct of the prevailing party," which is one of the statutory grounds for a new trial, has no application to any acts of a party except such as occur at the trial, and especially that it has no reference to something that may have occurred long prior to the trial. To this we cannot agree. The language of the statute contains no such restrictions. Nor is there any substantial reason why the acts of a party which were designed to and did operate at the trial to secure to him an undue advantage, by means which the law regards as reprehensible, should not furnish grounds for setting aside the verdict merely because they were set in motion before the trial. In *May, Weil & Co. v. Ham,* 10 Kan. 598, the syllabus reads:

"Where it is shown, on a motion for a new trial, that the prevailing party in the cause prior to the commencement of the trial attempted to pack the jury, the verdict should be set aside for such misconduct, unless it should also appear, clearly and beyond all reasonable doubt, that the other party was not prejudiced by such conduct.

"And where such misconduct was discovered by the other party during the trial it is sufficient for such party to raise any question connected therewith, after verdict, on a motion for a new trial."

The statute makes misconduct of the prevailing party a ground for a new trial, provided the substantial rights of the complaining party have been materially affected. This does not require an affirmative showing that but for the misconduct the verdict would have

been different, for it is obvious that such a showing would be ordinarily impossible.

Both parties have equally the right to a fair and impartial trial, which includes the right to have the jury drawn without one party having exercised a choice or selection of the men who shall serve thereon, except as provided by law, when the jurors are examined upon their *voir dire.* Where one of the parties unlawfully secures the selection of certain men for the regular panel, and prevents certain others from being drawn who were regularly chosen for jury service, it can hardly be seriously contended that the rights of the other party have not been materially affected thereby. In *May, Weil & Co. v. Ham, supra,* it was said, in the opinion:

"It may also be that the seeming misconduct of the plaintiffs did not affect the verdict of the jury; but it may be that it did, and we cannot say that we feel clear that it did not, and this is all that is necessary to require a reversal of the judgment. When a party has committed a flagitious act in order to obtain some undue advantage over his adversary, as it would seem one of the plaintiffs in this case did, such party should not ask that the other parties should show that they were in fact prejudiced by his acts. On the contrary, he should be compelled to show clearly and beyond all reasonable doubt, if not beyond all doubt, that such parties were not prejudiced by his unwarranted and reprehensible misconduct." (Page 601.)

It is seriously urged that the objections to the manner in which the jury were drawn amounts to a challenge to the array and comes too late. It is doubtless true that the irregularities could have been shown in support of such a challenge, and the proof would have warranted the court in quashing the panel, but that fact does not in any sense give character to a showing made, not for the purpose of quashing the panel, but for the purpose of setting aside a verdict and obtaining a new trial. If the charges set forth in the motion were true, plaintiff in error might have been prose-

cuted criminally, but it would hardly be said that for
that reason the truth of the charges could not be shown
for any other purpose, or could not be used to support
a motion for a new trial.

Another contention is that what plaintiff in error
chooses to call "irregularities" and "informalities"
were waived because the objections were not taken
sooner; that by ordinary diligence the objections to the
manner in which the jury were drawn could have been
made before the trial.    It is a sufficient answer that
defendants in error, according to the evidence, had no
notice or knowledge of the facts relied upon until after
the trial.    Besides, they were certainly not bound to
assume that a county officer who happened to be a
party to the action might falsify the records and tam-
per with the jury-box.    And it is a misuse of the Eng-
lish language to characterize the acts charged against
plaintiff in error as mere "irregularities" and "infor-
malities." .

It is true, as contended, that there was no direct evi-
dence that plaintiff in error was responsible for the
alterations in the lists of jurors or had tampered with
the jury-box.    But we do not agree with the claim that
there was no evidence which tended to show a motive
on his part to secure an unfair and unlawful advan-
tage.    On the contrary, there was direct evidence show-
ing a disposition to obtain an unfair advantage with
the jury and showing an attempt to influence some
who might be called to serve on the case, and direct
evidence of an attempt to conceal and distort the facts
with respect to the jury-lists after an investigation had
begun.    The jury-box and the jury-lists were in his
official custody, and were undoubtedly altered and tam-
pered with; and, while no witness testified to seeing
him in the act of making the alterations or changes,
the circumstances in evidence were very suspicious, and
beyond any question, in our opinion, were sufficient to
require the court to set aside the verdict and order a
new trial.    This is especially true in view of the failure

of plaintiff in error to contradict the direct testimony
of the four trustees, the justices or the sheriff as to
what transpired at the time the returns were made
and the drawings took place, or to contradict the testi-
mony of the trustees that he attempted to induce them
to suppress the facts; and in view also of his willing-
ness to rely upon technical objections to the considera-
tion of the evidence rather than to attempt to explain
the suspicious circumstances.

It is finally insisted that the reason assigned by the
trial court for allowing the motion amounts to a find-
ing that the charges of misconduct were not established
by the evidence, and that a new trial was in fact
granted upon grounds not included either in the mo-
tion or provided for in the statute. The remarks of
the court were as follow:

"I have no criticism to make upon any one con-
nected with this case, nor am I going into the question
of the manner in which certain names got into that
jury-box, but I want to say this: that there is a suspi-
cion caused by the manner of drawing that jury which
should not exist in any court on earth.

"It is possible that the instructions of the court were
not clear enough. It is barely possible that the jury
did not weigh and consider the evidence as they should
have done; but I have no criticism to make upon the
jury. They did as they thought was right; but, on
account of the suspicion that is raised that the plain-
tiffs did not have a fair and impartial trial, and the
jury were not fairly drawn, I am of the opinion that a
new trial should be had, and that the judgment should
be set aside and a new trial ordered."

In the light of the uncontradicted evidence we can-
not regard the language of the court as a finding that
the charges were not established, but are rather in-
clined to view the language used as showing a disposi-
tion on the part of the trial judge to avoid unnecessary
harshness in characterizing what appeared to be rep-
rehensible conduct by one of the parties.

Courts are created to secure the administration of
justice between contending parties; and where, after

a trial, evidence is produced which arouses well-grounded suspicion that the prevailing party may have exercised an unlawful and corrupt interference with the selection and drawing of the jury, it is the duty of the court promptly to set aside the verdict and order a new trial, without proof that the rights of the other party have been materially affected by such misconduct. Upon the showing made on the motion in this case we think it would have been error not to have ordered another trial.

The judgment is affirmed.