THE STATE OF KANSAS V. H. CALHOUN.

No. 14,947    (88 Pac. 1079.)

SYLLABUS BY THE COURT.

1. FORGERY—*Uttering and Passing of Forged Paper—Procurement.* The offense defined in section 133 of the crimes act (Gen. Stat. 1901, § 2126) is not the uttering or passing of forged paper by the accused, but is rather the procuring of another to pass forged paper by a sale, exchange or delivery, or the offering to sell, exchange or deliver, for any consideration, forged paper, knowing it to be forged, and with the intent to have it passed.

2. ——— *Information — Sufficiency.* An information which charges that the accused transferred and delivered a forged promissory note to a bank, knowing it to be false and forged, and with the intent to defraud the bank, and that it was transferred and delivered with the intention to have it uttered and passed to the bank, sufficiently charges an uttering and passing of forged paper under section 134 of the crimes act. (Gen. Stat. 1901, § 2127.)

3. ——— *Proof of Uttering and Passing a Forged Paper.* Proof of the transfer and delivery of a forged note as collateral security for a loan of money, with knowledge that the note was false and forged, and with the intent to defraud, is sufficient to show an uttering and passing of the forged paper, and the fact that the bank to which it was passed did not suffer actual loss nor find it necessary to realize on the collateral does not relieve the act of the accused of its criminal character.

4. ——— *Evidence of Other Offenses—Knowledge of False Character of the Paper.* For the purpose of proving that the accused had knowledge of the false character of the instrument which he is charged with uttering and passing, it is competent to show that at about the time of the offense he possessed or uttered other similar forged instruments.

Appeal from Sedgwick district court; THOMAS C. WILSON, judge. Opinion filed February 9, 1907. Affirmed.

STATEMENT.

H. CALHOUN was prosecuted on a charge of forgery. The National Bank of Commerce of Wichita loaned to H. Calhoun forty dollars, for which he gave his indi-

vidual note, and as collateral security he delivered to the bank three small notes, among them one note for forty dollars, payable to his own order four months after date, and purporting to have been executed by F. L. McAlister, W. A. McAlister, and Isaac Fink. The prosecution was based on the giving of this collateral note. In the information it was charged:

"That H. Calhoun . . . did . . . unlawfully, feloniously, wilfully and intentionally, with the intent then and there to defraud the National Bank of Commerce of Wichita, the said bank being then and there duly organized and incorporated under and by virtue of the national banking laws of the United States, then and there unlawfully, feloniously, wilfully and intentionally sell, exchange and deliver one false, forged and counterfeit instrument of writing, to wit, a promissory note [setting out a copy of the note, which contained a power of attorney to confess judgment, together with several waivers], said promissory note being indorsed on the back as follows, to wit, 'H. Calhoun,' the same purporting to be the act of other persons, to wit, F. L. McAlister, W. A. McAlister and Isaac Fink, and by which false, forged and counterfeit promissory note a pecuniary demand and obligation was then and there purported to be created to said H. Calhoun and by him, the said H. Calhoun, transferred to the said National Bank of Commerce of Wichita, in consideration of certain money, to wit, the sum of forty ($40) dollars, and which false, forged and counterfeit promissory note so sold, exchanged and delivered by the said H. Calhoun, as aforesaid, the said H. Calhoun then and there well knew to be false, forged and counterfeit, and the said H. Calhoun did then and there unlawfully, feloniously, wilfully and intentionally exchange and deliver said false, forged and counterfeit promissory note to the said National Bank of Commerce of Wichita, as aforesaid, with the intent of him, the said H. Calhoun, then and there unlawfully and feloniously to have the same uttered and passed to the said National Bank of Commerce of Wichita, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Kansas."

Motions to quash and in arrest of judgment were

made and denied, and the trial which followed resulted in a conviction. Calhoun appeals.

*C. C. Coleman*, attorney-general, *Fred S. Jackson*, assistant attorney-general, and *J. A. Brubacker*, county attorney, for The State.

*William Keith*, for appellant; *James A. Ray*, and *John W. Adams*, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: The appellant contends that he was prosecuted under section 133 of the crimes act (Gen. Stat. 1901, § 2126), and that the information does not sufficiently charge the offense defined in that section. The act denounced in that section is not the uttering or passing of forged paper; but it is the sale, exchange or delivery of forged paper, or the offer to sell, exchange or deliver such paper, with the intention of having the same uttered or passed by another. It will be observed that Calhoun is not charged with delivering the note to the bank with the intention that the bank should pass and put it into circulation, but it is alleged that the delivery was made with the intention to have it passed to the bank. Counsel for the appellant are correct in saying that the offense charged is not fairly within section 133 of the crimes act, which does not apply to the passing of forged instruments or writings, but rather to putting such false instruments and writings into the hands of another with the intention that he shall pass them. The substantial feature of the offense defined in that section is the procuring of another to pass forged paper, and the supreme court of Missouri, in passing upon a similar statute, held that it covered cases where the person to whom it was sold or delivered was innocent of the forgery as well as cases of willing purchasers or takers who might be confederates in the crime. (*State v. Patterson*, 116 Mo. 505, 20 S. W. 9, 22 S. W. 696.)

Counsel, however, cannot be sustained in the claim

that the language of the information fails to state an offense within the purview of other sections of the crimes act. It fairly charges an offense under section 134 of the act, which provides:

"Every person who, with intent to defraud, shall pass, utter or publish, or offer or attempt to pass, utter or publish, as true, any forged, counterfeited or falsely uttered instrument or writing, or any counterfeit or any imitation of any gold or silver coin, the altering, forging or counterfeiting of which is hereinbefore declared to be an offense, knowing such instrument, writing or coin to be altered, forged or counterfeited, shall upon conviction be adjudged guilty of forgery in the same degree hereinbefore declared for the forging, altering or counterfeiting the instrument, writing or coin so passed, uttered or published, or offered or attempted to be passed, uttered or published." (Gen. Stat. 1901, § 2127.)

While the pleader used some of the language employed in section 133, the information stated every essential element of the fraudulent passing of a forged instrument as defined in section 134. Calhoun was charged with transferring and delivering the note to the bank, knowing it to be false and forged, and with doing so with the intent to defraud the bank. There is the added averment that his delivery of the note to the bank was made with the felonious intent to have it passed to the bank. It is argued that the averment of an intention "to have it passed" is not the equivalent of an allegation that he intended to pass it. The expression was inaccurate, and justly subject to criticism, but when taken in the connection in which it was used it fairly charges Calhoun himself with passing the paper. The indorsement and transfer of the note to the bank with the intention to defraud the bank and to have the note passed to the bank is the substantial equivalent of a fraudulent uttering and passing of the forged paper.

Complaint is made that the trial court in its instructions informed the jury of the elements that would con-

stitute the forgery of an instrument an offense other than that which was charged against appellant. As he was accused of uttering and passing a forged instrument it was proper and important that the jury should be advised of what is a false, forged and counterfeited instrument. The passing of an instrument which is not a forgery would not be within the section under which the prosecution was had, and there would have been good grounds to complain if the court had omitted to call the attention of the jury to the essential elements of the forgery of an instrument or writing.

There is a contention that one of the instructions was so phrased as to assume the guilt of the defendant. When the instruction is read in connection with the entire charge it is clear that there was no assumption of guilt, and that the jurors could not have been misled, but must have understood that the question whether appellant had uttered and passed the note was open for their determination under the evidence.

Nor is there good reason to complain of the instruction "that the offense of uttering a forged instrument consists in offering to another a false or forged instrument with capacity to injure and with the knowledge of its falsity and with an intent to defraud, and it is not essential that the attempt to defraud be successful, and the putting up of a forged note as collateral security for the purpose of borrowing money is a passing and uttering of such forged note within the meaning of the statutes of this state." This is a succinct statement of the elements of the uttering and passing of forged paper. Proof of the giving of a forged note as collateral security for a loan of money, with the knowledge that the note was false and forged, and with an intent to defraud, is sufficient to show an uttering and passing of the forged paper; and the fact that the bank did not suffer loss nor find it necessary to realize on the collateral security does not relieve the act of its criminal character. Nor would the fact that the note as passed was not accepted as genuine by the one to

whom it was offered and who therefore incurred no risk of injury from loss operate to diminish the crime.

Objection is made to the charge as to the intent of the accused. It is true, as counsel contend, that the intent to defraud is a vital element of the offense, but, as the court told the jury, if the bank refused the loan unless collateral security was given, and if Calhoun put up the forged note as security and obtained the loan knowing that the note was forged, the jury were warranted in inferring an intent to defraud the bank, and it would be no defense that the loan was subsequently paid by Calhoun. The statement of the court in its instruction was no more than to say that if the recited facts were shown beyond a reasonable doubt it would be sufficient proof of a purpose to defraud.

Other rulings in the giving and refusing of instructions are criticized, but we find nothing substantial in the objections. Nor was there error in the admission in evidence of the collateral notes transferred by Calhoun to the bank in connection with the one upon which the prosecution was based. The testimony tended to show that these, too, were forgeries, and that they had been forged by Calhoun. It appears that all of them were given to secure the loan and accomplish the intended fraud upon the bank, and they tended to show knowledge of the forgery and the fraudulent intent of the accused. The testimony was not incompetent because it tended to show that these additional notes were forgeries. They were admissible to show the appellant's knowledge that the paper passed was false and forged. It has been said:

"On a trial for uttering and publishing forged instruments knowledge of the character of the writing may be shown by proving that the defendant possessed and uttered other similar forged instruments, and that, too, although such offenses occurred subsequently to the offense under trial, or have been the subject of other indictments." (13 A. & E. Encycl. of L. 1103, and cases cited.)

The exclusion of testimony relating to the insanity

of appellant was not error. The preliminary inquiry did not indicate that the witness had such information as to make him a competent witness or to give any value to his opinion. Besides, the questions were not directed to the time of the commission of the offense.

We have examined all the assignments of error and we find no grounds for reversal.

The judgment is affirmed.