No. 45,110

STATE OF KANSAS, *Appellee,* v. RICHARD HENRY JARVIS, also known as RICHARD DAVIS, *Appellant.*

(443 P. 2d 272)

Opinion filed July 13, 1968.

*Jack N. Turner,* of Wichita, argued the cause and was on the brief for the appellant.

*R. K. Hollingsworth,* Deputy County Attorney, argued the cause, and

Robert C. Londerholm, Attorney General, Keith Sanborn, County Attorney, and Russell Grant, Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is a criminal action in which the defendant was charged in two counts with third degree forgery contrary to K. S. A. 21-616, and in the third count with possession of a fictitious, fraudulent and counterfeit certificate of title contrary to K. S. A. 1965 Supp. (now 1967 Supp.) 8-113. Defendant was tried to a jury and convicted on the first and third counts, and from a judgment and sentence thereon appeal has been duly perfected to this court specifying various trial errors.

The questions presented relate to the admissibility of evidence and the giving of instructions.

The evidence in the case discloses that on the 4th day of January, 1965, the Hinkle Oil Company through its president, J. B. Hinkle, assigned the title to a 1960 Silver Cloud Rolls Royce automobile (Kansas title No. B 1287303) for the sum of $6,000 to Richard J. Davis, also known as Richard Henry Jarvis, the appellant herein. The money was paid by the personal check of the appellant. Sometime later the appellant requested J. B. Hinkle to execute an affidavit that the title had been assigned to the appellant by mistake —that it should have been assigned to someone else. J. B. Hinkle after consulting with his attorney refused to give the appellant such an affidavit. In the latter part of July, 1965, the appellant talked to Mrs. Muriel Upton, accountant for the Hinkle Oil Company, and she testified the appellant said:

"The title needed to be changed, that it was incorrect; and of course, I wasn't aware of that and would I make an affidavit to such and I said no."

In July, 1965, the appellant became manager-operator for Morris Kernick, doing business as Performance Motors, a licensed automobile dealer, operating under dealer's license No. 2630.

Shortly after the appellant began work for Performance Motors, he drew a line through his name as purchaser on the assignment of title to the Rolls Royce automobile in question and typed above it the name "Performance Mtrs. Wichita, Kansas." He also forged or caused to be forged an affidavit by J. B. Hinkle that the assignment had been made to the appellant by mistake, and should have been made to Performance Motors. The appellant himself also

signed a disclaimer affidavit to the same effect, and then forged or caused to be forged a re-assignment of the title in the name of Performance Motors to another automobile dealer, Foreign Cars Unlimited. The re-assignment purports to be signed by Morris Kernick on behalf of Performance Motors (Dealer) and was notarized before the appellant on the 15th day of September, 1965. Kernick testified that he did not own the Rolls Royce, did not execute the re-assignment, and did not authorize the appellant to sign his name to the re-assignment.

The first count of the information upon which the appellant was convicted charged him with forging the affidavit of J. B. Hinkle.

The third count of the information upon which the appellant was convicted charged him with knowingly having in his possession a fictitious, fraudulent and counterfeit Kansas certificate of title by reason of the alteration and unauthorized re-assignment of the title to the Rolls Royce in question as heretofore indicated.

Inasmuch as the appellant was acquitted on count two because there was no evidence presented by the state on this count, we shall make no further reference to it.

When Foreign Cars Unlimited attempted to get title to the Rolls Royce in its name, the Kansas Motor Vehicle Department refused to honor the title on the basis of the documents presented. As a result the appellant was required and did apply for a title to the Rolls Royce in his own name, and paid the sales tax and registration fee to the Motor Vehicle Department, whereupon title was ultimately issued to Foreign Cars Unlimited.

Prior to the transactions concerning the Rolls Royce in question, and on December 2 and 3, 1964, Mr. Byers and Mr. Billings of the Motor Vehicle Department had talked to the appellant concerning other motor vehicle transactions. In the course of the conversations with these gentlemen, it was disclosed the appellant was not a licensed used car dealer, but was engaged in the purchase and sale of automobiles as an individual. He disclosed his occasional practice was to purchase an automobile by taking the assignment of title in blank, and upon his resale of the automobile filling in the blank space with the name of the new purchaser. He would thereby escape paying the sales tax, the registration fee and title fee. Under Kansas law only licensed automobile dealers who purchase for resale are exempt from these taxes and fees.

While the appellant was at the Motor Vehicle Department talk-

ing with Mr. Byers and Mr. Billings, he feigned ignorance of the law and denied any intent of wrongdoing. He subsequently made settlement with the Motor Vehicle Department by paying it $250 for back registration and title fees.

At the trial of the case one of the basic issues before the court was the intent of the appellant to commit the acts with which he was charged. It was the obligation of the state to prove beyond any reasonable doubt that the appellant intended to defraud the state of sales tax, registration and title fees. To do so the state was required to show the appellant had knowledge that by changing the assignment of the title to the Rolls Royce from himself as an individual to a licensed automobile dealer, it would extinguish the pecuniary obligation to the state for the sales tax, the title registration fee and the title application fee, and that he committed the acts with the intent to cheat the state out of such money.

The appellant challenges the evidence admitted through the testimony of Mr. Byers and Mr. Billings to the effect that the appellant had been illegally engaged in the practice of "cross-titling" in Kansas, whereby sales taxes, registration fees and title application fees were escaped.

The trial court admitted such evidence on the ground that it was offered to prove intent, inclination, plan, scheme, method or system of operation.

The general rule in Kansas concerning the admissibility of evidence of other similar but independent offenses is set forth in K. S. A. 60-455. It reads:

"Subject to section 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion *but,* subject to sections 60-445 and 60-448 *such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."* (Emphasis added.)

While the foregoing section is a part of the new code of civil procedure, the rules of evidence incorporated therein (Article 4, RULES OF EVIDENCE) are designed to have application to every proceeding, both criminal and civil, conducted by or under the supervision of a court, in which evidence is produced, except to the extent to which they may be relaxed by other procedural rule or statute applicable to the specific situation. (K. S. A. 60-402.)

It has been said the rule of evidence stated in 60-455, *supra,* as applied to criminal proceedings, has not materially changed the case law as it has developed in Kansas prior to the enactment of the new code. (*State v. Wright,* 194 Kan. 271, 398 P. 2d 339.)

In a criminal action the rule against the admissibility of evidence of other similar but independent offenses should always be strictly enforced, and to justify any departure therefrom the evidence must come under one or more of the exceptions to the general rule as set forth in the code of civil procedure, K. S. A. 60-455.

It has been said since the adoption of the new code of civil procedure that proof of an independent crime is admissible in the discretion of the court, and may be received in the state's case in chief, under proper instructions, if it is relevant to prove the guilt of the defendant for the crime with which he is charged. To be relevant it must prove or tend to establish identity of the person or crime, scienter or guilty knowledge, intent, inclination or motive, plan, scheme or system of operation, malice, or to rebut special defenses. (*State v. Mader,* 196 Kan. 469, 412 P. 2d 1001; and see *State v. Lewis,* 195 Kan. 389, 405 P. 2d 796; *State v. Poulos,* 196 Kan. 287, 411 P. 2d 689, cert. den. 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63; and *State v. Crowe,* 196 Kan. 622, 414 P. 2d 50.)

The appellant contends that nowhere in the testimony of Mr. Byers or Mr. Billings does it appear that they ever had any knowledge of the appellant signing someone's name without authorization, although it is conceded the testimony indicates the appellant had been "cross-titling."

The appellant takes the position that cross-titling is not evidence tending to prove "intent, inclination, plan, scheme, method or system of operation" where the appellant is charged with signing the name of another without authorization—that there is no direct connection between the offense charged and the evidence of other offenses committed.

Under the facts and circumstances confronting the court in the instant appeal, we think the appellant's position is too restrictive. The motivating factor, both in cross-titling and in the offenses for which the appellant is charged, was to escape the payment of sales taxes, registration fees and title fees to the state. We think the evidence of cross-titling showed the appellant's intent, his inclination or motive, his plan, and his scheme or system of operation which was designed to escape his pecuniary obligations to the state.

Here the appellant defended the charges on the ground the Rolls Royce was assigned to him by mistake upon the purchase of the automobile. His wife testified that right after the appellant received the title to the Rolls Royce, they had gone to the county treasurer's office together to get instructions as to how to correct the assignment because it had been made out incorrectly.

We hold the previous illegal acts of the appellant, which had the effect of avoiding the payment of sales tax, registration and title fees, were admissible to prove the element of intent required in the offenses charged.

The appellant challenges instruction No. 10 given by the trial court. It reads:

"You are instructed that to sustain the charge of forgery, it is not necessary for the State to prove by direct and positive evidence, the manual execution of the false signature by the defendant. The possession by the defendant and the representation by the defendant, directly or indirectly, by words or actions, that a document or instrument is good and valid raises an inference that the defendant forged the document or instrument, and places upon the defendant the burden of explaining away the possession and representation by the defendant, directly or indirectly, by words or actions, that the document or instrument was good and valid. If the same are not explained away, this may be sufficient to warrant a finding that the defendant committed the forgery, or was a guilty accessory to its commission."

It is argued the instruction assumes that evidence has been introduced to show the appellant had possession of the documents described in the first and third counts of the information, and that there was evidence to show the appellant represented the documents in question to be good and valid. The appellant contends there is no evidence in the record to show these facts.

Viewing the evidence in the record as a whole, we think the appellant's position on this point is untenable. The appellant submitted the affidavit of J. B. Hinkle to a notary public for acknowledgment of the forged signature; the appellant executed a disclaimer affidavit corroborating the forged affidavit of J. B. Hinkle; the appellant also acknowledged the forged signature of Morris Kernick in the "RE-ASSIGNMENT BY KANSAS REGISTERED DEALER ONLY" appearing on the reverse side of the certificate of title to the Rolls Royce automobile. The delivery of these documents by the appellant to the owner of Foreign Cars Unlimited for the purpose of assigning the title to the Rolls Royce automobile constituted a representation by the appellant that the documents were valid.

The forgery of J. B. Hinkle's signature to the affidavit and the

forgery of Morris Kernick's signature on the re-assignment of title were established by direct evidence, and the delivery of these documents to the owner of Foreign Cars Unlimited is inferentially established by the presentation of such documents to the Motor Vehicle Department by the owner of Foreign Cars Unlimited for special processing.

Instruction No. 10 above quoted is basically the same instruction that was considered in *State v. Mader*, 196 Kan. 469, 412 P. 2d 1001, where the instruction was approved. We hasten to add, however, the instruction given in the *Mader* case was more complete in that it added the following sentence:

" '. . . However, this inference is rebuttable and does not relieve the State from the duty of proving the defendant guilty beyond a reasonable doubt.' " (p. 474.)

In the instant case the trial court in other instructions informed the jury of the burden of proof and that it was required to construe each instruction in the light of and in harmony with other instructions given to it. On the record it cannot be said the giving of instruction No. 10 denied the appellant a fair trial.

The evidence disclosed that after the Motor Vehicle Department refused to issue a title to Foreign Cars Unlimited, the appellant paid the sales tax and other fees on the Rolls Royce automobile. In this connection the jury was instructed (instruction No. 13) some evidence had been introduced that the appellant paid the license registration fee and sales tax on the Rolls Royce automobile after the commission of the alleged offense. The jury was told this would not be a defense to the charge if it found the appellant committed the offenses as alleged.

The appellant objected to this instruction, and contends it was erroneously given on the ground it excludes payment as a defense, which has a bearing on the intent factor the jury was required to consider on both counts.

The foregoing instruction correctly states the law. It informed the jury that if the appellant forged the affidavit in question with intent to defraud the state, subsequent payment by the appellant would be no defense. (*State v. Calhoun*, 75 Kan. 259, 88 Pac. 1079.)

Instruction No. 11 informed the jury that any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal. The appellant objected to instruction No. 11, and contends it was

erroneously given on the ground there was no evidence in the record to support a conclusion that the appellant aided or abetted in the commission of the offenses with which he was charged.

There was testimony by the appellant's wife as a defense witness to the effect that she went with her husband to the courthouse after the Rolls Royce was purchased because the title was made out incorrectly. She also testified she got a receipt when she paid the sales tax on the Rolls Royce for her husband at the Department of Revenue.

The possibility that the jury may have considered the appellant's wife to be involved in the offenses charged, by reason of her testimony, warranted the giving of instruction No. 11. The jury had previously been informed by instruction No. 10 that possession of a forged instrument, together with a representation that it is good and valid, raises an inference that the defendant forged the instrument. On the evidence the jury could have found the state had not sustained the burden of proving that the appellant forged the signature of J. B. Hinkle to the affidavit which was the subject of count one. In *State v. Winters,* 120 Kan. 166, 241 Pac. 1083, this court disposed of a similar contention, stating:

". . . In other words, his possession of the car so soon after it was stolen, unexplained, is just as much evidence that he aided and abetted in its larceny as it is that he actually stole it. . . ." (p. 171.)

On the record presented instruction No. 11 was properly given.

The appellant contends the trial court erred in giving instruction No. 12, which reads:

"You are instructed that there has been some evidence in this case as to the defendant having committed acts similar to those with which he is charged in the information filed in this case.

"You can consider similar acts alleged to have been committed by this defendant only for the purpose of showing, among other things, intent, inclination, plan, scheme, knowledge, method or system of doing business. These similar acts cannot be considered by you in determining your verdict for any other purpose than these questions."

First, the appellant contends this instruction is prejudicial in that it states some evidence has been introduced as to the defendant having committed acts similar to those with which he is charged, thus implying that whatever testimony was introduced did show that the appellant committed similar acts. The instruction is compared with that given in *State v. Shannon,* 194 Kan. 258, 398 P. 2d 344, cert. den. 382 U. S. 881, 15 L. Ed. 2d 122, 86 S. Ct. 172, reh. den.

382 U. S. 922, 15 L. Ed. 2d 238, 86 S. Ct. 298, where the jury was told that "evidence has been introduced by the State *tending* to show. . . ." (p. 262.) (Emphasis added.) The *Shannon* instruction went on to state that even if the jury believed such evidence to be true, it was to be considered only for the limited purposes stated in the instruction.

While we do not regard instruction No. 12 as a model in the art of draftsmanship, we do not think it fatally defective. The instruction did advise the jury that it was entitled to consider "similar acts *alleged* to have been committed by this defendant only for the purpose of. . . ." (Emphasis added.) The instruction did not categorically state the appellant had committed the acts, but only that *some evidence* of acts had been admitted in the case. A similar objection was made to the instruction in *State v. Ridgway*, 108 Kan. 734, 197 Pac. 199, where Justice Burch answered:

"The defendant says that by the instruction quoted the court told the jury the evidence proved other offenses of which the defendant was guilty. There was evidence of other larcenies, and there was very persuasive evidence the defendant was guilty of at least one of them; but the instruction is not open to the objection urged. In order to avoid circumlocution, the court used the expression 'other similar offenses'; but the qualifying expressions, 'the facts surrounding' and 'evidence concerning commission,' made it clear. the court was describing, and not characterizing." (p. 737.)

Appellant's counsel argued the foregoing points in the trial court on his motion for a new trial, and we cannot say on the basis of the whole record presented the trial court erred in overruling the motion for a new trial.

The judgment of the lower court is affirmed.