No. 46,716

RICHARD DAVIS, *Appellant,* v. STATE OF KANSAS, *Appellee.*

(504 P. 2d 617)

Opinion filed December 9, 1972.

*Leon J. Greenspan,* of White Plains, New York, argued the cause, and *Gerald D. Lasswell,* of Stinson and Lasswell, of Wichita, was with him on the brief for the appellant.

*Keith Sanborn,* county attorney, argued the cause, and *Vern Miller,* attorney general, and *R. K. Hollingsworth,* chief deputy county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal from an order denying post-conviction relief.

Appellant Richard Davis was convicted by a jury of the offenses of third degree forgery (K. S. A. 21-616) and alteration and possession of a fictitious, fraudulent or counterfeit motor vehicle certificate of title (K. S. A. 1971 Supp. 8-113). He was sentenced to consecutive terms of confinement. Upon direct appeal to this court those convictions were affirmed under the title of *State v. Jarvis,* 201 Kan. 678, 443 P. 2d 272.

Thereafter appellant filed his petition to vacate the sentences pursuant to K. S. A. 60-1507. Evidentiary hearing was had, the petition was denied and this appeal ensued.

A summarization of the evidence upon which appellant was convicted is found in *State v. Jarvis*, supra, as follows:

"The evidence in the case discloses that on the 4th day of January, 1965, the Hinkle Oil Company through its president, J. B. Hinkle, assigned the title to a 1960 Silver Cloud Rolls Royce automobile (Kansas title No. B 1287303) for the sum of $6,000 to Richard J. Davis, also known as Richard Henry Jarvis, the appellant herein. The money was paid by the personal check of the appellant. Sometime later the appellant requested J. B. Hinkle to execute an affidavit that the title had been assigned to the appellant by mistake—that it should have been assigned to someone else. J. B. Hinkle after consulting with his attorney refused to give the appellant such an affidavit. In the latter part of July, 1965, the appellant talked to Mrs. Muriel Upton, accountant for the Hinkle Oil Company, and she testified the appellant said:

" 'The title needed to be changed, that it was incorrect; and of course, I wasn't aware of that and would I make an affidavit to such and I said no.'

"In July, 1965, the appellant became manager-operator for Morris Kernick, doing business as Performance Motors, a licensed automobile dealer, operating under dealer's license No. 2630.

"Shortly after the appellant began work for Performance Motors, he drew a line through his name as purchaser on the assignment of title to the Rolls Royce automobile in question and typed above it the name 'Performance Mtrs. Wichita, Kansas.' He also forged or caused to be forged an affidavit by J. B. Hinkle that the assignment had been made to the appellant by mistake, and should have been made to Performance Motors. The appellant himself also signed a disclaimer affidavit to the same effect, and then forged or caused to be forged a re-assignment of the title in the name of Performance Motors to another automobile dealer, Foreign Cars Unlimited. The re-assignment purports to be signed by Morris Kernick on behalf of Performance Motors (Dealer) and was notarized before the appellant on the 15th day of September, 1965. Kernick testified that he did not own the Rolls Royce, did not execute the re-assignment, and did not authorize the appellant to sign his name to the re-assignment.

. . . . . . . . . . . . .

"When Foreign Cars Unlimited attempted to get title to the Rolls Royce in its name, the Kansas Motor Vehicle Department refused to honor the title on the basis of the documents presented. As a result the appellant was required and did apply for a title to the Rolls Royce in his own name, and paid the sales tax and registration fee to the Motor Vehicle Department, whereupon title was ultimately issued to Foreign Cars Unlimited.

"Prior to the transactions concerning the Rolls Royce in question, and on December 2 and 3, 1964, Mr. Byers and Mr. Billings of the Motor Vehicle Department had talked to the appellant concerning other motor vehicle transactions. In the course of the conversations with these gentlemen, it was disclosed the appellant was not a licensed used car dealer, but was engaged in the

purchase and sale of automobiles as an individual. He disclosed his occasional practice was to purchase an automobile by taking the assignment of title in blank, and upon his resale of the automobile filling in the blank space with the name of the new purchaser. He would thereby escape paying the sales tax, the registration fee and title fee. Under Kansas law only licensed automobile dealers who purchase for resale are exempt from these taxes and fees.

"While the appellant was at the Motor Vehicle Department talking with Mr. Byers and Mr. Billings, he feigned ignorance of the law and denied any intent of wrongdoing. He subsequently made settlement with the Motor Vehicle Department by paying it $250 for back registration and title fees." (pp. 679-681.)

Evidence developed at the postconviction hearing will be stated where requisite to consideration of the errors asserted upon appeal.

Appellant's principal complaint is that the two counts upon which he was convicted actually constituted but one crime punishable by a single sentence. He argues that the gravamen of his purported offenses was not the forgery of the affidavit and the alteration and possession of the certificate of title but simply cheating the state of its sales tax.

Appellee makes a two-pronged response. First, it asserts appellant is precluded from raising the defense of multiplicity of prosecution or double jeopardy under K. S. A. 60-1507 by virtue of our rule No. 121 (c) (3) (see 205 Kan. xlv) and by the doctrine of waiver of an affirmative defense, inasmuch as no such issue was raised at trial level or upon direct appeal from the convictions, and, treating the complaint as one of constitutional dimensions, no exceptional circumstances were shown to excuse the failure to raise the issue upon appeal, as required by the cited rule. Despite the merit of this contention we will treat the matter on its substantive rather than procedural aspect.

In support of his position appellant cites certain of our decisions, typical of which are *State v. Colgate,* 31 Kan. 511, 3 Pac. 346, and *State v. McLaughlin,* 121 Kan. 693, 249 Pac. 612.

In *Colgate* a mill and all its contents, including the books of account of the mill owner, were destroyed by a single fire and the defendant was prosecuted and acquitted for setting fire to and burning the mill. It was held such acquittal was a good defense to a subsequent prosecution for setting fire to and burning the books of account. Respecting the plea of former jeopardy this court discussed the applicable "identity of offenses" test in the following language:

". . . [I]t is clear beyond all doubt, as appears from the real facts of

the case as set forth in the defendant's plea of a former acquittal, that the principal facts constituting the two alleged offenses are identically the same; and that one of such offenses could not be proved without proving the principal facts constituting the other of such offenses. Indeed, the offense charged in the first information could not be proved without proving all the facts constituting the offense charged in the second information. If the defendant was guilty under either information, he must have been guilty under both; and if he was innocent as to either of the offenses charged, he must have been innocent as to both. He could not possibly be guilty of one, and innocent of the other. [pp. 513-514]

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"And upon general principles a single offense cannot be split into separate parts, and the supposed offender be prosecuted for each of such separate parts, although each part may of itself constitute a separate offense. If the offender be prosecuted for one part, that ends the prosecution for that offense, provided, such part of itself constitutes an offense for which a conviction can be had. And generally we would think that the commission of a single wrongful act can furnish the subject-matter or the foundation of only one criminal prosecution." (p. 515.)

At this point it may be noted the plea of double or former jeopardy is closely akin to that of multiplicity of prosecution and the two have been characterized in the same terms by this court, with the same tests applied (see, e. g., *State v. Ford,* 117 Kan. 735, 232 Pac. 1023; *State v. McLaughlin,* supra, *State v. Carte,* 157 Kan. 673, 143 P. 2d 774; *State v. Gauger,* 200 Kan. 515, 438 P. 2d 455.) In *State v. Pierce, et al.,* 205 Kan. 433, 469 P. 2d 308, we held:

"Generally, a single wrongful act should not furnish the foundation of more than one criminal prosecution.

"The test to be applied in determining the question of identity of offenses laid in two or more counts of an information is whether each requires proof of a fact which is not required by the others." (Syl. ¶¶ 2, 3.)

Let us turn now to the statutes defining the two offenses of which appellant was convicted. In count one he was convicted of forgery of the J. B. Hinkle affidavit in violation of K. S. A. 21-616 (since repealed and now superseded by K. S. A. 1971 Supp. 21-3710 and 21-3711), which provided:

"Every person who, with intent to injure or defraud, shall falsely make, alter, forge or counterfeit any instrument or writing being or purporting to be the act of another, by which any pecuniary demand or obligation shall be or purport to be transferred, created, increased, discharged, conveyed or diminished, or by which any rights or property whatsoever shall be or purport to be transferred, conveyed, discharged, increased, or in any manner affected, the falsely making, altering, forging or counterfeiting of which is not hereinbefore declared to be a

forgery in some other degree, shall on conviction be adjudged guilty of forgery in the third degree."

In count three appellant was convicted of alteration of a certificate of title and possession of a fictitious or fraudulent certificate of title as denounced by K. S. A. 1971 Supp. 8-113, which provides in pertinent part:

"Any person who shall . . . alter or deface or cause to be altered or defaced or knowingly have in his possession any fictitious, fraudulent, or counterfeit certificates of title . . . shall be deemed guilty of a felony. . . ."

Applying the foregoing tests it is clear the counts in question were not multiplicious. To convict on count one it was necessary for the state to prove that the Hinkle signature to the affidavit stating the assignment of title to the automobile had been made to appellant by mistake, was a forgery, that appellant forged the signature and the forgery was done with intent to defraud the state of Kansas. To convict on count three, charging the alteration and possession of fictitious certificate of title, it was necessary to prove appellant had altered the certificate by forging the reassignment, that he had intended to produce a fictitious title and as a result of the alteration the certificate was fictitious, fraudulent or counterfeit, and that appellant knowingly possessed it.

Two different documents were involved and different proof was required for each count. Proving one count obviously would not have proven the other, nor would acquittal on one require acquittal on the other, as was the case in *Colgate* and *McLaughlin.*

Cheating the state may have been the motive for both offenses but a single motive for a series of acts does not necessarily result in a single crime. In *Wagner v. Edmondson,* 178 Kan. 554, 290 P. 2d 98, the plaintiff had been convicted of breaking jail and of assaulting a jailer with intent to commit a prison break while lawfully confined, all of which constituted a single series of events. His complaint by way of postconviction attack was that he had committed but one single offense and he had unconstitutionally undergone double jeopardy in being convicted of two. In disposing of the contention on its merits this court stated:

". . . the test for determining whether a continuous transaction results in the commission of but a single offense, is not dependent on the number of unlawful motives in the mind of the accused, but is determined by whether separate and distinct prohibited acts, made punishable by law, have been committed." (p. 556.)

In *Wagner* this court further held:

"A test concerning whether a single transaction may constitute two separate and distinct offenses is whether the same evidence is required to sustain each charge, and if not, the fact that both charges relate to and grow out of one transaction does not make a single offense where two distinct offenses are defined by statute." (Syl.)

Appellant's contention of multiplicity of prosecution or former jeopardy in violation of his constitutional rights is without merit.

Somewhat allied is appellant's assertion he was unconstitutionally subjected to cruel and unusual punishment by consecutive sentences for acts which constituted only one crime. He was sentenced upon count one to confinement for not less than seven years and upon count three to confinement for not less than one nor more than five years, such sentences to be served consecutively. We have determined appellant has not been convicted twice for the same crime—it follows he is not being punished twice for the same crime.

As to the severity of a particular sentence, in response to a challenge that it was so disproportionate to the offense as to constitute cruel and unusual punishment, we had this to say in *Cipolla v. State*, 207 Kan. 822, 486 P. 2d 1391:

"The severity of punishment, if within the statutory limits set by the legislature, is within the discretionary power of the trial court." (pp. 824-825.)

Here the sentences were within statutory limits, nothing indicates their imposition resulted from any corrupt or arbitrary action or motive and relief on the ground of improper sentence must be denied.

Appellant contends that by reason of rulings made by the court in the trial wherein he was convicted he was prevented from taking advantage of his constitutional right to remain silent. The thrust of his argument is directed toward instruction No. 10 which is set out in full in *State v. Jarvis*, supra, p. 683, and will not be repeated here. The propriety of this instruction was upheld in the direct appeal on authority of *State v. Mader*, 196 Kan. 469, 412 P. 2d 1001, in which we held the giving of a similar instruction respecting inferences which may be drawn from the unexplained possession of a forged instrument did not infringe accused's constitutional right not to incriminate himself. More need not be said.

Appellant asserts the defense of entrapment, arguing he was induced by the Kansas Motor Vehicle Department to commit the crimes of which he was convicted. In his brief he states the de-

partment "insisted that a sales tax be paid and ordered [appellant] to retransfer the vehicle into his own name and pay the tax. This action by the Motor Vehicle Department induced the [appellant] into committing acts which became the subject of a criminal prosecution." Assuming that an issue of entrapment could properly be raised for the first time in a 1507 proceeding, the contention is patently frivolous. The record contains nothing remotely resembling entrapment.

Appellant's four remaining specifications of error relate to new testimony presented by him at the postconviction evidentiary hearing. Overall, he asserts this testimony negated the criminal intent requisite for his conviction in that it showed an honest mistake had been made in the initial titling of the Rolls Royce automobile in his name. This matter of intent, of course, was a disputed issue of fact at appellant's first trial—where it was resolved against him—and went to the very heart of appellant's guilt or innocence, which issue is not justiciable in a 1507 proceeding (*Wolfe v. State*, 201 Kan. 790, 443 P. 2d 260). We will mention only briefly the new testimony offered. One witness, Estel Gorsage, testified he was present at the Hinkle Oil Company office and heard the conversation between appellant and G. W. Hinkle, father of J. B. Hinkle, as to the purchase of the Rolls Royce (it appears appellant's negotiations respecting this purchase were carried on with G. W. Hinkle, who died July 3, 1965, and that J. B. Hinkle simply signed the certificate of title as president of the Hinkle Oil Company outside appellant's presence); that appellant told Mr. Hinkle he was a car dealer and the vehicle in question would be used as a road car in the automobile business and to put the title in the company name; that he presumed appellant meant to have the title placed in the name of Performance Motors although he never heard that name mentioned.

Appellant makes two contentions respecting the Gorsage testimony. First, he presents it as newly discovered evidence warranting the grant of new trial; and second, he asserts the prosecution unconstitutionally denied him due process by suppressing this exculpatory evidence.

As to appellant's first contention, and assuming the court had jurisdiction to grant a new trial on the ground of newly discovered evidence, which may well be doubted in view of our decision in *State v. Hemminger*, 207 Kan. 172, 483 P. 2d 1096, the testimony

in question obviously was not newly discovered evidence because by its very nature it was known to appellant at the time of trial if Gorsage was in truth with him when he made such statements to Hinkle. Facts fully within the knowledge of a party at the time of trial cannot later be denominated newly discovered evidence for the purpose of obtaining a new trial (*State v. Oswald*, 197 Kan. 251, 417 P. 2d 261). Further, before a trial court is authorized to grant new trial on the ground of newly discovered evidence, it must be shown to the court's satisfaction that such evidence could not with reasonable diligence have been produced at the trial (*State v. Collins*, 204 Kan. 55, 460 P. 2d 573). No such showing appears here.

Turning to the second contention as to the Gorsage testimony, the record completely fails to support appellant's assertion the prosecution improperly suppressed any evidence favorable to him. Appellant points to no facts which would lend any semblance of credence for the contention. Gorsage did testify as a prosecution witness at the initial trial but evidently he was not questioned by anyone respecting the alleged conversation later revealed. However, there is no indication in the record that the prosecution was aware of any exculpatory evidence of which appellant was not aware.

The other new evidence offered at 1507 hearing was recanting testimony by Morris Kernick. As already indicated, the reassignment of the certificate of title to the automobile in question purports to have been signed by Kernick on behalf of Performance Motors (Dealer). At the conviction hearing Kernick testified he did not own the automobile, did not execute the reassignment and did not authorize appellant to sign his name to the reassignment. In a preliminary affidavit filed in connection with the 1507 proceeding Kernick averred that in the latter part of 1964 and the early part of 1965 he was doing business in Wichita under the name of Performance Motors although he did not receive his license to do business as a used car dealer until sometime in February, 1965; appellant was associated with him and he had authorized appellant to use the name Performance Motors in his dealings in the signing of necessary papers and that appellant had negotiated the purchase of the Hinkle Rolls Royce on behalf of Performance Motors; that after appellant was charged in this case he (Kernick) was threatened by officials of the motor vehicle department and by two deputy county attorneys of Sedgwick county that he must testify against appellant as they desired, specifically that he was to testify he had

never authorized appellant to use the name Performance Motors in business dealings or to use his (Kernick's) name in any way; that he had previously pled guilty in federal court to a charge of conspiracy to transport a stolen automobile and had been sentenced to four years' imprisonment and was then placed on probation; he was threatened that if he did not testify favorably to the prosecution he might have his dealer's license revoked, he would be prosecuted in state court on the same charge to which he had pled guilty in federal court and that his federal probation would be revoked, and this was why he had sworn to the falsehoods at appellant's trial.

At the evidentiary 1507 hearing, which was held more than two years after the conviction hearing, Kernick testified, reiterating in accord with his affidavit that he had perjured himself at the first hearing but he receded from his assertion of threatening and coercion by state and county officials; he explicitly exonerated the chief deputy county attorney of any wrongdoing and he presented no tangible, credible evidence of misconduct on the part of any other county or state official. There simply was no showing the prosecution knowingly procured or used any perjured testimony in violation of appellant's right to due process of law nor does the record contain any basis for a charge of bad faith on the part of the prosecution in connection with the Kernick testimony or in any other phase of the case, as intimated by appellant. Beyond this, and giving Kernick's second version of events respecting appellant's connection with the Rolls Royce credibility (which the trial court was not obliged to do), appellant still would not be absolved from wrongdoing. Without going into detail, Kernick and appellant did not finalize any agreement to establish a partnership or other arrangement in the name of Performance Motors up through 1964 and until after February, 1965, when Performance Motors was authorized to do business; appellant took the title to the Rolls in his own name on January 4, 1965, paying for it with his own funds, at which time he did not have a dealer's license. That which has been said respecting new trial because of the Gorsage testimony is also applicable as to new trial sought because of the Kernick testimony, plus the fact that recanting testimony involving a confession of perjury is not looked upon with favor in considering

grant of a new trial (see *State v. Theus,* 207 Kan. 571, 485 P. 2d 1327).

We find nothing to warrant disturbing the trial court's denial of relief and that judgment is affirmed.

APPROVED BY THE COURT.