NOT DESIGNATED FOR PUBLICATION

No. 112,942

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DARYL W. ARMSTRONG, JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed July 22, 2016. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Christina Trocheck*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., HILL and BRUNS, JJ.

*Per Curiam*:  A jury convicted Daryl W. Armstrong, Jr., of four counts of aggravated indecent liberties, two counts of aggravated sodomy, plus convictions for indecent liberties and sodomy, all arising from his sexual abuse of his daughter beginning when she was 5 or 6 years old and continuing until she was age 15. We need not recount here the sordid history of Armstrong's crimes. The parties are well acquainted with the evidence against him presented at trial. Armstrong's defense was his denial that he committed these crimes and his contention that his daughter made up these claims because she was angry at him over a confrontation that erupted in front of their house when she wanted to visit her boyfriend who lived across the street.

1

The jury rejected Armstrong's claims, no doubt in part because of entries in the child's diary well before this final confrontation and because of earlier statements the child made to her boyfriend and several of her girlfriends about the abuse, and from whom she exacted promises of secrecy. When Armstrong's wife confronted him after the abuse came to light, Armstrong simply packed his bags and left.

Armstrong's daughter was not his only victim. When Armstrong's younger sister was between the ages of 4 and 6, Armstrong molested her. Later, he raped her when they were both teenagers.

The State moved in advance of trial to admit evidence pursuant to K.S.A. 2015 Supp. 60-455 of the uncharged sexual acts committed by Armstrong against his older daughter, one incident of molesting his younger daughter, as well as prior sexual acts against Armstrong's sister. The district court granted the motion, finding the evidence relevant to prove the material fact of propensity and that its probative value outweighed its prejudicial effect.

The victim in this case, Armstrong's older daughter, testified at trial about Armstrong's uncharged abuse as did Armstrong's sister. Armstrong's younger daughter did not testify at trial.

The case was originally mistried. Following Armstrong's convictions at the retrial, he moved for a new trial, arguing that when his wife testified at trial she lied about an incident after these crimes were disclosed when Armstrong attempted suicide. Armstrong was hospitalized in Abilene after his suicide attempt. His wife came to visit him in the hospital, but she denied allowing Armstrong back into her house after he was released from the hospital. But another witness, a friend of Armstrong's, testified that when Armstrong was discharged, his wife took him to her house to stay the night so she could watch over him. He testified that he took Armstrong to his wife's house about six times

2

after dark and picked him up the next morning. He stated that he had text messages from Armstrong's wife on his cell phone that confirmed his testimony, but his cell phone was not working at the time of trial. It was after the trial that he replaced the phone's battery and retrieved the text messages that corroborated his trial testimony.

The district court denied Armstrong's motion and sentenced Armstrong to consecutive life sentences for his six off-grid convictions, plus an additional 98 months for the grid convictions. This appeal followed.

*K.S.A. 60-455 Evidence*

Armstrong argues the district court erred in admitting evidence of prior uncharged sexual acts because the prejudicial effect of this testimony outweighed its probative value. K.S.A. 2015 Supp. 60-455 governs the admission of prior crimes evidence involving sexual misconduct. In April 2009, well before the trial in this case, K.S.A. 60-455 was amended to provide that "evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." K.S.A. 2015 Supp. 60-455(d). This rule of evidence in effect at the time of Armstrong's trial controls. See *State v. Hart*, 297 Kan. 494, 510, 301 P.3d 1279 (2013).

In *State v. Prine*, 297 Kan. 460, Syl. ¶ 3, 303 P.3d 662 (2013), our Supreme Court concluded:  "As long as the evidence is of 'another act or offense of sexual misconduct' and is relevant to prove propensity or 'any matter,' it is admissible, as long as the district judge is satisfied that the probative value of the evidence outweighs its potential for undue prejudice." See *State v. Spear*, 297 Kan. 780, 789, 304 P.3d 1246 (2013) (district courts must balance the probative value against the threat of undue prejudice).

*State v. Sturm*, 673 F.3d 1274, 1284-85 (10th Cir. 2012), sets forth four factors to consider in weighing probative value against prejudicial effect: (1) how clearly the prior act had been proved; (2) how probative evidence is of the material fact it is admitted to prove; (3) how seriously disputed the material fact is; and (4) whether the government can avail itself to any less prejudicial evidence. Our Kansas statute is modeled after the Federal Rules of Evidence. *Prine*, 297 Kan. at 476. In *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998), the court noted that the exclusion of this type of evidence after weighing the probative value against its prejudicial effect should be infrequent, noting that Congress' legislative intent indicated that evidence of similar crimes should "'normally'" be allowed in child molestation cases.

At trial, Armstrong did not object to any of the prior crimes evidence admitted during his daughter's testimony. Because a timely and specific objection is required at trial to preserve an issue for appeal, we will limit our analysis to whether the district court erred in allowing testimony of Armstrong's prior sexual misconduct involving his sister. See *State v. King*, 288 Kan. 333, 341-42, 204 P.3d 585 (2009). In doing so, we review de novo the legal basis for admitting this evidence. See *State v. Bowen*, 299 Kan. 339, 349, 323 P.3d 853 (2014). We also review de novo whether the trial court complied with specific statutory requirements for admitting the evidence. See *State v. Stafford*, 296 Kan. 25, 47, 290 P.3d 562 (2012).

In order to comply with K.S.A. 2015 Supp. 60-455(d), the district court had to consider (1) whether the evidence was relevant and probative of Armstrong's propensity to commit the charged crimes and (2) the probative value of the evidence compared to the possibility of undue prejudice arising from its admission. See *Prine*, 297 Kan. at 477-78.

Relevant evidence is "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). The concept of relevancy includes (1) materiality, which we review de novo; and (2) the probative value of the evidence, which we review

4

using an abuse of discretion standard. *State v. Coones*, 301 Kan. 64, 78, 339 P.3d 375 (2014). Evidence is probative if it furnishes, establishes, or contributes toward proof. Evidence is material if it tends to establish a fact that is at issue and is significant under the substantive law of the case. *State v. Marks*, 297 Kan. 131, 142, 298 P.3d 1102 (2013). Even if evidence is relevant, a trial court has discretion to exclude it where the court finds its probative value is outweighed by its potential for producing undue prejudice. See K.S.A. 60-445. An appellate court reviews any such determination for an abuse of discretion. See *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). Judicial action constitutes an abuse of discretion if it is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

In order for the prior crimes evidence to tend to prove a propensity to commit the charged sex crimes, the prior crimes evidence must be sufficiently similar to the current allegations. See *Bowen*, 299 Kan. at 349. Armstrong argues that the prior crimes evidence in this case had little probative value because it did not deal with acts sufficiently similar to the charged acts. Further, his sister's testimony related to acts of misconduct that occurred 30 to 40 years before the acts charged in this case.

At trial, Armstrong's sister testified about three incidents: (1) her brother fondling her when she was between 4 and 6 years of age; (2) in her later years of elementary school, her brother asking if he could touch her breasts in exchange for an 8-track tape that she wanted; and (3) her brother raping her when they were both teenagers and she was vulnerable from drinking too much alcohol.

In the present case, Armstrong often promised his daughter material items and privileges if she would submit to his sexual abuse. Armstrong was in a position of trust with respect to this younger female family member. Further, there were incidents in which Armstrong's daughter woke up to find him engaging in cunnilingus. The evidence

5

of Armstrong's conduct toward his sister was sufficiently similar to the present charged acts to show his disposition or propensity to sexually molest a family member over whom he held a position of trust. Armstrong's abuse of his daughter started at about the same age that he started abusing his sister and lasted for about the same amount of time.

On the issue of undue prejudice, consideration "turns not on whether the evidence is damaging but on whether the evidence is likely to contribute to an improper jury verdict or distract from the central issues at trial." *State v. Dern*, 303 Kan. 384, Syl. ¶ 3, 362 P.3d 566 (2015).

Obviously, Armstrong's sister's testimony was prejudicial. It was offered by the State in the hope that it would help convict Armstrong. But given the overwhelming evidence of Armstrong's commission of the charged crimes coming from a number of independent sources, we are satisfied that the testimony from Armstrong's sister did not change the outcome of the case. Her testimony occupies approximately 40 pages of the trial transcript which involved almost 800 pages of opening statements, trial testimony, and closing arguments. Her testimony did not prompt an improper jury verdict or distract the jury from the central issues of Armstrong's guilt or innocence.

*Motion for New Trial*

Armstrong argues that the district court erred in denying his motion for a new trial, which was based on the claim that Armstrong's wife lied when she testified about her contact with Armstrong when he was released from the hospital after attempting suicide.

Pursuant to K.S.A. 2015 Supp. 22-3501(1), a "court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice." We review the ruling on such a motion for any abuse of discretion. *State v. Soto*, 301 Kan. 969, 977, 349 P.3d 1256 (2015).

To establish the right to a new trial based upon newly discovered evidence, a criminal defendant must establish that this new evidence (1) could not have been produced at trial with reasonable diligence, and (2) would likely produce a different result upon retrial if admitted. In determining whether new evidence is material, the trial court must assess the credibility of the newly proffered evidence. We will not reassess the district judge's determination of credibility from such a hearing. *State v. Laurel*, 299 Kan. 668, 676-77, 325 P.3d 1154 (2014).

Armstrong relies on *State v. Saenz*, 271 Kan. 339, 341-43, 22 P.3d 151 (2001), in which Saenz claimed that a witness for the State lied at trial about pending criminal charges against him and the benefit he would receive in exchange for his testimony. Our Supreme Court cited *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959), which quoted the New York Court of Appeals statement that "'[a] lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth . . . .'" *Saenz*, 271 Kan. at 345. But the *Saenz* court concluded that the pending charge against the witness was not material because it did not relate to his motive for testifying falsely. Further, the witness did not know before he testified that he would later receive favorable treatment in exchange for his testimony. Finally, there was no possibility of a different result at trial if the witness had testified truthfully. Thus, the district court did not err in denying the motion for a new trial. 271 Kan. at 345-46.

Granting a new trial due to newly discovered evidence is not favored, and a motion to do so should be viewed with caution. *State v. Smith*, 39 Kan. App. 2d 64, Syl. ¶ 2, 176 P.3d 997, *rev. denied* 286 Kan. 1185 (2008). In Kansas, new trials are not granted on the basis of newly discovered evidence which tends merely to impeach the testimony of a witness. See *Baker v. State*, 243 Kan. 1, 11, 755 P.2d 493 (1988); *State v. Foy*, 224 Kan. 558, 569, 582 P.2d 281 (1978); *Davis v. State*, 210 Kan. 709, 716-17, 504 P.2d 617 (1972); *State v. Theus*, 207 Kan. 571, 579, 485 P.2d 1327 (1971).

7

For the witness' testimony about the text messages to constitute newly discovered evidence, Armstrong needed to show that the text messages could not have been produced at trial with reasonable diligence. See *Laurel*, 299 Kan. at 676. The witness, Armstrong's friend, knew the texts were on his cell phone well in advance of trial. All he needed to do to retrieve them was to put a battery in the phone. Armstrong failed to show that this new evidence could not have been produced at trial with reasonable diligence.

Further, the testimony about what happened after Armstrong was discharged from the hospital is wholly collateral to the matters at issue in the case. Armstrong's wife never testified as a witness to Armstrong's sexual abuse of their daughter, so impeaching her would not have undermined the State's case. The evidence was irrelevant when it came to proving a material fact in the case. See *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 (2006). The district court did not abuse its discretion in denying Armstrong's motion for a new trial based upon newly discovered evidence.

*Prosecutorial Misconduct*

Armstrong argues that the prosecutor committed reversible misconduct in closing argument by vouching for the credibility of Armstrong's daughter and his sister. During closing argument, the prosecutor asked the jury what motive Armstrong's daughter would have in falsely reporting sex abuse. The prosecutor stated:

> "The defendant would have you believe this was about discipline. You don't even have to scratch beyond the surface to see this case is about a 15-year-old girl who had suffered the [effects] of sexual abuse for years. This wasn't about a girl who got mad because her dad took her phone away from her or grounded her. This was about a girl who could no longer keep that secret to herself."

The prosecutor stated that neither Armstrong's daughter nor his sister had anything to gain by coming forward with testimony about Armstrong's abuse. In fact, Armstrong's

8

sister had everything to lose by coming forward and bringing attention to herself. The prosecutor stated: "I submit that the evidence in this case shows that they had nothing to gain." Then, in the State's rebuttal, the prosecutor stated:

"And I'm asking you to find that the defendant . . . is guilty beyond a reasonable doubt . . . because [Armstrong's daughter and sister] have no motive to distort the truth to you. [Armstrong's daughter] simply told you about her years of abuse, and I would submit to you, ladies and gentlemen, the evidence shows that that's a credible account that she has . . . given to you."

In our review we first determine whether the prosecutor's comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, if the comments were improper and constituted misconduct, we determine whether the comments prejudiced the jury against the defendant and denied him a fair trial. *State v. Roeder*, 300 Kan. 901, 932-33, 336 P.3d 831 (2014), *cert. denied* 135 S. Ct. 2316 (2015). K.S.A. 2015 Supp. 60-261 states that no error at trial is grounds for granting a new trial or setting aside a verdict "[u]nless justice requires otherwise."

The prosecutor is not permitted to offer a personal opinion on the credibility of witnesses. *State v. Hart*, 297 Kan. 494, 505, 301 P. 3d 1279 (2013). See Kansas Rules of Professional Conduct 3.4(e) (2015 Kan. Ct. R. Annot. 609). Such comments are "unsworn, unchecked testimony, not commentary on the evidence." *State v. Bridges*, 297 Kan. 989, Syl. ¶ 17, 306 P.3d 244 (2013).

In *State v. Akins*, 298 Kan. 592, 608, 315 P.3d 868 (2014), our Supreme Court found that the prosecutor had improperly vouched for the credulity of the witnesses by stating her personal opinion: "'Yes, they are credible,'" and "'Yes, that's credible,'" in talking about the complaining witness. The court also found misconduct when the prosecutor stated that the defendant's statements were not credible. 298 Kan. at 608.

9

But here, the prosecutor's comments fall within the wide latitude allowed the prosecutor in commenting about the evidence. The prosecutor did not express a personal opinion on the credibility of the witnesses but merely pointed out that the evidence supported a finding that they were credible. With that, we need not address the prejudice element of the analysis.

*Cumulative Error*

Armstrong's final claim is that there were errors during the trial which, standing alone, do not warrant a new trial but when considered together denied him a fair trial. See *State v. Santos-Vega*, 299 Kan. 11, 27-28, 321 P.3d 1 (2014). Of course, such an argument is predicated upon there being multiple errors to accumulate. Because there are no errors to accumulate, this theory necessarily fails. See *State v. Haberlein*, 296 Kan. 195, 212, 290 P.3d 640 (2012), *cert. denied* 134 S. Ct. 148 (2013).

Affirmed.