No. 45,401

STATE OF KANSAS, *Appellee*, v. HOWARD B. ROBERTSON, *Appellant*.

(455 P. 2d 570)

Opinion filed June 14, 1969.

*Richard A. Benjes*, of Hutchinson, argued the cause, and *D. C. Martindell, W. D. P. Carey, J. Richards Hunter, Harry H. Dunn, Robert C. Martindell, William B. Swearer* and *Elwin F. Cabbage*, all of Hutchinson, were with him on the brief for appellant.

*Raymond F. Berkley*, County Attorney, argued the cause and *Kerry J. Granger*, Assistant County Attorney, was with him on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: Howard B. Robertson appeals from a conviction, judgment and sentence in the District Court of Reno County, Kansas, for robbery in the first degree. (K. S. A. 21-527.) He was sentenced as an habitual criminal for a period of not less than thirty years. (K. S. A. 21-107a.) Defendant had three prior felony convictions in Reno county.

Defendant-appellant's first specification of error is that the bail required was unjustified and excessive. The record from the district court affords this court little opportunity to evaluate such a claim. The amount of bail was fixed by the magistrate at $25,000. No proceedings to obtain a reduction of bail appear in the record. It does appear, however, the defendant has committed three previous felonies in Reno county.

The amount of bail rests in the sound discretion of the presiding magistrate. The purpose of bail is to insure the presence of the prisoner at a future hearing. In fixing the amount a magistrate should be guided by a consideration of the nature of the offense as shown by the proof thereof. He may consider the propensity of the

defendant for crime as indicated by his previous convictions. The magistrate must consider the probability of escape. No hard and fast rule can be laid down for fixing the amount of bail on a criminal charge. Each case must be governed by its own facts and circumstances. An appellate court should not interfere with the decision of the magistrate except where a clear abuse of discretion is shown affecting substantial rights and denying due process of the law. (8 C. J. S. Bail § 48b; 8 Am. Jur. 2d, Bail and Recognizance, § 39; *Craig v. State*, 198 Kan. 39, 41, 422 P. 2d 955.)

No abuse of discretion is shown in the present case.

Defendant next specifies that the trial court erred in allowing the prosecution to endorse additional witnesses on the information and to introduce their testimony at the trial.

The prosecuting attorney is required to endorse on the information the names of witnesses known to him at the time of filing. He may thereafter endorse the names of additional witnesses as may afterward be known to him if he obtains permission from the court. (K. S. A. 62-802; *State v. Poulos*, 196 Kan. 287, 290, 411 P. 2d 689; *State v. Zimmer*, 198 Kan. 479, 484, 426 P. 2d 267; *State v. Davis*, 199 Kan. 33, 37, 427 P. 2d 606.)

Subsequent endorsement and use of witnesses must be left to the sound discretion of the trial court as the interest of justice may require. The exercise of this judicial discretion is not without limitation. When it is shown the use of such witnesses will result in surprise and material prejudice preventing a fair preparation for defense the granting of such permission constitutes an abuse of judicial discretion. (*State v. Eidson*, 143 Kan. 300, 307, 54 P. 2d 977.)

This requirement of endorsement of witnesses is a safeguard extended to a defendant to prevent surprise and give him an opportunity to examine the witnesses for the state in advance of trial. (*Pyle v. Amrine*, 159 Kan. 458, 474, 156 P. 2d 509.)

In the present case the two witnesses endorsed late were accomplices who took part in the crime. The defendant had issued subpoenas before trial to secure their testimony. We assume defendant was familiar with their knowledge of the crime before he issued the subpoenas.

When the prosecuting attorney sought permission to endorse the names of the accomplices as witnesses he informed the court of the reasons for his original omission of their names. They were sepa-

rately charged with this crime. They were hostile to the prosecution. They were entitled to claim a privilege not to testify under the 5th Amendment to the Constitution of the United States. While the jury was being impaneled these accomplices indicated to the law officers a desire to testify against the defendant. This information was relayed to the county attorney and he sought verification and confirmation from their legal counsel. The following morning before any testimony was introduced the county attorney sought and obtained permission to endorse their names as witnesses. Defendant made objection but he did not ask for a continuance to ascertain the nature of their testimony. He already was advised of their knowledge of the crime. The testimony did not change the theory of the prosecution. It merely bolstered the case of the prosecution.

Under these circumstances there was no surprise or change in theory which would result in prejudice or deny defendant a fair and impartial trial. No abuse of judicial discretion occurred in permitting the endorsement and use of these witnesses under the circumstances shown by the record.

The final specification of error concerns alleged misconduct by the county attorney while the trial was in progress but during a noon recess. It is charged the county attorney intimidated one of defendant's witnesses and the witness did not testify.

Misconduct is not confined to occurrences while the case is being heard. It can occur before or during the trial and may be outside the hearing of the jury if the conduct results in loss of a witness's testimony which testimony would lend substantial support to the theory of a party. (*Phares v. Krhut,* 76 Kan. 238, 91 Pac. 52.)

The witness, a Mr. Castor, was approached by the county attorney during a noon recess. Both sides had issued subpoenas for this witness. The county attorney and Mr. Castor were standing near the railing which separates the courtroom. They were in a public place and in the presence of several people. The defendant was one of those present. Mr. Castor, the defendant and another bystander testified on the motion for mistrial.

Additional background information is necessary to understand what transpired. The defendant and his two accomplices stayed at Mr. Castor's home the night before the robbery. The robbery occurred around 8:00 a. m. The robbers returned to Mr. Castor's place with the fruits of the crime, $1205. The three robbers were

picked up at Mr. Castor's place several hours after the robbery took place. Some of the money was not recovered by the police.

On the motion of mistrial Mr. Castor was questioned by the county attorney and testified as follows:

"Q. And would you relate to the court what that conversation was as close as you can verbatim?

"A. You asked me, you said 'Castor, there is $800.00 missing and what did you do with the money,' and you said 'You have got the money, there is $400.00 in the couch and $400.00 in the attic and you took it and you better come up with it.'

"Q. Is that the extent of our conversation?

"A. No, I told you I didn't have it.

"Q. And what else did you tell me about that.

"A. I said there is a lot of people that had already been in the house before I got there, that I didn't know nothing about this until about 11:00 o'clock the next day after it happened.

"Q. And we had some conversation, I believe, about this couch, and you had indicated what, concerning this couch?

"A. That it has already been searched by the detectives.

"Q. In relation to our conversation concerning this money that was supposed to be in the house, will you state to the Court whether there was any mention concerning your testimony in any respect, either for the state or for the defense?

"A. You mean to testify for the defendant?

"Q. Was there any talk except the fact that I told you I wasn't going to use you about testifying in this case?

"A. You said 'I might not use you.'

"Q. Any other conversation between you and I about your testimony?

"A. No, other than you said I took the money.

"Q. But about the testimony, this is what I am relating to.

"A. No, nothing at all, nothing that I recall.

"Q. Were any threats made?

"A. No."

The testimony of the other witnesses did not change the substance of this testimony.

The defendant contends this conversation by the county attorney constitutes misconduct because it resulted in the loss of vital testimony in support of the defense.

Mr. Castor was present during the trial but he was not called to the stand by either party. The record does not indicate he refused to testify. There is no showing made as to what his testimony would have been, if called. There is no showing, except the absence of his testimony, that the conversation with the county attorney resulted in loss of his testimony. As we view the conversation set forth in

the record no misconduct is shown. The conversation merely indicates a desire by the county attorney to recover the fruits of the crime. It did not relate to trial testimony. It is difficult to read into it an intent to prevent the witness from testifying. It took place at a time and place where such an intent was improbable. It was not in the presence of the jury and no prejudicial error appears in the record.

The judgment is affirmed.