No. 45,642

The State of Kansas, *Appellee,* v. Henry Edward Burgess, Jr., *Appellant.*

(468 P. 2d 229)

Opinion filed April 11, 1970.

*Ronald W. Mayes,* of Wichita, argued the cause and was on the brief for the appellant.

*David P. Calvert,* Deputy County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, *Keith Sanborn,* County Attorney and *R. K. Hollingsworth,* Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: The defendant, Henry Edward Burgess, Jr., was convicted of first degree robbery and larceny of an automobile. He has appealed.

Evidence on behalf of the state disclosed that Burgess first met his victim, a male cosmetologist by the name of Dan R. Ohlerking, approximately May 30, 1968, at the Jolly Jug, a Wichita tavern. The following day Burgess moved into Ohlerking's house, at the latter's invitation, and lived there continuously until the date of the alleged offenses.

On the morning of June 4, 1968, Burgess phoned Ohlerking at his work, advising the latter he was leaving for work as a bartender in an undisclosed Wichita tavern. Later that morning Ohlerking drove to his home where he was accosted by a Freddie Welch, also known as Thomas David Neely, who placed a switchblade

knife at his throat and backed him into the kitchen where Burgess proceeded to whack him over the head with a riot baton or police billy.

Ohlerking was bound, gagged and blindfolded and then deposited in a clothes closet. Burgess and Freddie thereafter departed the scene in Ohlerking's Mustang car, taking with them a goodly assortment of their victim's personal belongings. The following noon Mr. Burgess was observed by Albuquerque officers attempting to pawn Ohlerking's Garrard turntable. Burgess attempted to flee but was soon apprehended in the basement of a nearby hotel. Mr. Ohlerking's $600 ring, wrist watch, wallet and credit cards were all found on the person of Burgess. Additional property belonging to Ohlerking was found in the Mustang which Burgess had left in the street.

A key to a motel room was also found on Burgess. A search of the motel revealed some twenty banlon shirts belonging to Ohlerking, along with eight pairs of slacks. Both Burgess and Freddie, the latter having later been apprehended following a railroad track out of town, were returned to Wichita where the pair took up residence at the Sedgwick County jail.

As it has heretofore been recited, the state's evidence clearly negatives the defendant's contention that the verdict returned by the jury was contrary to the evidence. The defendant asserts that his guilt was not proved *beyond a shadow of a doubt* or by an *overwhelming preponderance of the evidence,* but neither of these suggested standards has ever been ordained as a legal criterion for determining guilt. The traditional test which is applicable to criminal prosecutions within this jurisdiction is whether guilt of the accused has been established beyond a reasonable doubt. (*State v. Patton,* 66 Kan. 486, 71 Pac. 840; *State v. Wolfley,* 75 Kan. 406, 89 Pac. 1046; *State v. Killion,* 95 Kan. 371, 148 Pac. 643.)

It is quite true that the defendant presented evidence to support his denial of guilt. Freddie Welch testified that Burgess was not his accomplice in the commission of the crimes perpetrated against Ohlerking; that he was assisted by a bosom friend known to him as "Jim"; that he and "Jim" picked up Burgess, who was a total stranger, as Burgess hitchhiked his way near Oklahoma City; and that "Jim" disappeared from view at some unknown time while he, Freddie, slumbered in repose.

The defendant, himself, also was a witness. He denied phoning

Ohlerking on that ill-fated morning. About noon, he said, he took a bus to Oklahoma City arriving there about 4 p. m.; that he hiked to highway 66 where he was picked up by Freddie, whom he did not know, and who was alone in the car; that the two of them went to a motel; that after recognizing Ohlerking's car and personal belongings, he left the motel room while Freddie was immersed in sleep, intending to return the pilfered property to Ohlerking, its rightful owner; and that he set out to raise money for the drive back to Wichita.

This evidence was properly admitted for the jury to consider in determining whether the guilt of the defendant had been established beyond a reasonable doubt. However, this court's appellate function is not to decide whether guilt was shown by the evidence beyond a reasonable doubt, but to ascertain whether there was, in the evidence, a basis for a reasonable inference of guilt. (*State v. Scott*, 199 Kan. 203, 428 P. 2d 458; *Lloyd v. State*, 197 Kan. 389, 416 P. 2d 766.) The requirements of that test appear to have been fully met in this case.

The defendant raises a number of points as violating due process, none of which we deem meritorious. First, he complains that his bond, set at $10,000, was exorbitant. We think otherwise. As we understand the purpose of our statutes requiring bond from persons accused of crime, it is to assure their presence at the time and place of trial. (*Craig v. State*, 198 Kan. 39, 422 P. 2d 955.) The city of Wichita was not the native heath of Mr. Burgess. He came briefly to rest within its corporate borders from the sovereign state of Alabama. After a few days tryst with "Danny" Ohlerking, he heeded the ancient advice advanced by Greeley and, with much of his host's belongings, headed west for parts unknown. The size of the bond seems not unreasonable in view of the defendant's love of wanderlust. We discern no violation either of the Eighth Amendment to the Constitution of the United States or of § 9 of the Bill of Rights of the Kansas Constitution.

Mr. Burgess next complains that he was not provided with counsel until ten days had elapsed from the date of his return to Wichita. The record reveals that counsel was appointed well in advance of the preliminary examination and that appointed counsel was present with and represented the defendant at such examination. Under such state of facts, prejudice may not be presumed absent a showing to such effect.

Nor is there any substance to the charge that failure to provide the defendant with a transcript of the preliminary hearing impinged upon his constitutional rights. Neither our statutes nor our procedural rules impose such an obligation on the state, and no prejudice to the substantial rights of the defendant has been shown on this score.

Finally, the defendant alleges that prejudicial error resulted from certain testimony given by a Mr. Edgar L. Williams, Freddie's uncle. The facts are these: While testifying in his own behalf, the defendant was asked to relate, on redirect examination, what had occurred during a visit between himself and Mr. Williams at the county jail. In substance, Burgess testified that Williams had implied that he, Burgess, forced Freddie to commit the crimes with which the two were charged and that he should, if possible, clear Freddie because Freddie had a future ahead of him. Burgess further testified that in reply he told Williams that he had no intention of admitting the crime, which he did not commit, and letting Neely (or Freddie) go free.

Mr. Williams was called by the state in rebuttal and he testified that Burgess' part of the conversation went like this: That there was no need for two men to take the rap when one had a family and the other did not; that he, Burgess, was a three-time loser and would take the rap and let Freddie go free because he had a family.

Objection to this evidence is focused on the reference to defendant's past record. We think, however, the evidence was both admissible and competent to rebut testimony brought out by the defendant himself on his own redirect examination. The defendant opened up the subject, and evidence relating to the substance of the conversation could be shown in contradiction to the version which he recounted. (K. S. A. 60-420; *Jacks v. Cloughley,* 203 Kan. 699, 457 P. 2d 175.) Moreover, when the trial court offered to give a covering instruction concerning this evidence, the offer was rejected by the defendant. Certainly under these circumstances, and in view of the strong web of guilt woven by the state, no prejudice can be presumed.

The judgment of the trial court is affirmed.