No. 49,250

State of Kansas, *Appellee,* v. Roger D. Foy, *Appellant.*

(582 P.2d 281)

Opinion filed July 21, 1978.

*Jack W. Shultz,* of Dodge City, argued the cause and was on the brief for the appellant.

*Judd Dent,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict which found Roger D. Foy (defendant-appellant) guilty of felony murder (K.S.A. 21-3401).

Numerous trial errors are asserted on appeal for reversal of the conviction and sentence.

The appellant and Sharon Foy were married in Littleton, Colorado, in 1966. Their marriage was characterized by frequent periods of discord and violence. Sharon obtained a divorce from the appellant in 1973; however, the two continued to live together at various intervals. The appellant testified he attributed his marital problems largely to interference by Sharon's mother, Mrs. Grace Kruelhous.

The appellant and Sharon were living together with their family in the basement of Grace Kruelhous' home in Dodge City, Kansas, on January 1, 1976, when the events leading up to the shooting began. During the afternoon of New Year's Day Sharon went drinking with some girl friends. Subsequently, she accompanied the group to a private party at Marvin Schmidt's trailer where she continued to drink and smoke marijuana. When Sharon had not arrived home by 7:00 p.m. the appellant and a friend began looking for her. After finding her at Schmidt's trailer the appellant demanded she return home. When Sharon refused, the appellant slapped and kicked her in front of the others.

The following day Sharon signed a complaint charging the appellant with battery. For some reason the complaint was not filed until January 19, 1976. In any event, Sharon told the appellant she had signed the complaint at her mother's urging and asked him to live with her brother, Rex Kreie, in order to "give Mom a chance to cool off," but the appellant and Sharon continued to see one another until the night she was shot and killed.

On January 20, 1976, the appellant was served at work with a summons for the battery charge. He borrowed a truck from his employer and went to the cafe where Sharon was working to discuss the situation. Apparently, she assured him they would talk when she got off work. The appellant then began drinking, and when Sharon failed to contact him, he started calling Grace Kruelhous' home.

The appellant testified on two of these occasions he heard Grace holler to "Hang up on the son-of-a-bitch and call the Police." After informing Sharon he contemplated suicide she urged him to visit a relative of hers to talk and to pray. The appellant did visit Sharon's aunt, Elsie Sterling, and she and her husband counseled and prayed with him.

After returning home the appellant resumed his drinking and decided to walk to Grace's house in order to talk to Sharon. He testified he took a sawed-off shotgun with him thinking if Grace interfered, he would kill her. As he approached the Sonic Drive-In he saw his friend Steve Smith and asked him for a ride to Grace's house. Smith testified he asked the appellant what he was going to do with the gun and the appellant answered, "blow somebody's shit away." When Smith asked to whom he was referring, the appellant answered, "The old lady." The appellant testified he was referring to Grace. After this conversation the appellant put the gun in his pants and pulled his coat over it.

Grace Kruelhous testified that at approximately 8:00 p.m. she and Sharon had been watching television when the appellant opened the front door and walked in. While the evidence is conflicting, Sharon allegedly stated, "Roger, you are not supposed to be in mamma's house." She said that she would "call the Law" if he did not leave. The two stood facing each other in the front hall at the time. As Grace arose from her chair to call the police the appellant glanced in her direction and in his anger squeezed down on the hammer. The gun discharged shooting Sharon in the face and killing her instantly.

The appellant then threw the gun into the air and ran from the house. He proceeded to wander around the streets until police sirens frightened him. Thereafter, he walked to Lois Baxley's home and asked her to drive him to Haysville, Kansas, where his close friend, Kenneth Cupp, lived.

Mrs. Baxley and the appellant drove immediately to Haysville where the appellant informed Cupp he had killed Sharon. Cupp testified he did not believe the appellant because he thought the couple had been in another fight and the appellant had "probably scabbed her up again." Cupp decided the appellant should go to a motel and get some sleep and the two arranged to meet at 11:00 a.m. the next day so that Cupp could help the appellant turn himself in.

After the appellant left his home Kenneth Cupp became concerned the story might be true. He called a friend at KAKE radio station in Wichita, Kansas, and was advised the appellant was wanted for the murder of his wife. Cupp then drove to Wichita in order to search for the appellant and enlisted the aid of Officer William C. Naholnik of the Wichita Police Department.

The appellant and Lois Baxley were found at the El Rancho Motel on South Broadway, and they were arrested. Officer Naholnik testified the appellant made certain incriminating statements to him en route to the police station after he was given the *Miranda* warning.

Subsequently, the appellant was arraigned on June 18, 1976, and pled not guilty to the charge of first-degree premeditated murder set forth in the information. His motions for a change of venue and reduction of bond were overruled.

At the trial the judge instructed the jury, over objection, on the theory of felony murder based upon aggravated burglary as the underlying felony. The jury then found the appellant guilty of first-degree murder under the felony murder provisions of the statute. The trial court, over objection, immediately sentenced the appellant to two life sentences under the Habitual Criminal Statute. The appellant's motion for a new trial was denied and appeal has been duly perfected.

## I. Change of Venue

The appellant first contends the trial court erred in overruling his motion for change of venue. In support of this motion he filed copies of numerous newspaper articles and radio stories concerning the crime. He also offered seven identical affidavits from various business people in Ford County and testimony of the undersheriff indicating he could not receive a fair trial in the county.

The granting of a change of venue lies within the sound discretion of the trial court. The burden is on the defendant to show prejudice in the community not as a matter of speculation but as a demonstrable reality (*State v. Cates,* 223 Kan. 724, 730, 576 P.2d 657 [1978]; *State v. Sanders,* 223 Kan. 273, 279-80, 574 P.2d 559 [1977]; *State v. Gilder,* 223 Kan. 220, 223, 574 P.2d 196 [1977]; and *State v. Porter,* 223 Kan. 114, 117, 574 P.2d 187 [1977].) Media publicity alone has never established prejudice *per se.* (*State v. Gilder,* supra at 223 and *State v. Porter,* supra at

117.) The mere inclusion of identical conclusory type affidavits is generally not considered a plausible showing of prejudice. (*State v. Black,* 221 Kan. 248, 249, 559 P.2d 784 [1977].)

In this case the newspaper articles are neither inflammatory nor unduly suggestive. In fact, some do not even mention the appellant. The trial court properly denied the motion for change of venue under the circumstances.

## II.   Excessive Bail

The appellant next asserts the trial court erred in requiring excessive bail and in denying his motion for reduction of bond. The appellant's bond was initially set at $100,000 but was raised to $250,000 at his first appearance before the trial court.

Generally, no hard and fast rule can be laid down for fixing the amount of bail on a criminal charge, and each case must be governed by its own facts and circumstances. (*State v. Robertson,* 203 Kan. 647, 455 P.2d 570 [1969].) The amount of bail rests within the sound discretion of the presiding magistrate. (*State v. Way,* 204 Kan. 375, 461 P.2d 820 [1969]; and *Craig v. State,* 198 Kan. 39, 422 P.2d 955 [1967].) The purpose of the statutes requiring bond from persons accused of crimes is to assure their presence at the time and place of the trial. (*State v. Burgess,* 205 Kan. 224, 226, 468 P.2d 229 [1970]; and *Craig v. State,* supra at 41.)

The evidence presented at the preliminary hearing revealed the appellant admittedly shot the deceased, left Dodge City immediately after the crime, and had few friends and relatives in the town. No abuse in the exercise of the trial court's power of discretion has been shown. It must be noted the appellant failed to file an application for writ of habeas corpus, and he does not claim his defense was hampered by his custody status. In *State v. Dunnan,* 223 Kan. 428, 430, 573 P.2d 1068 (1978), our court recently held the matter of pretrial release moot under similar circumstances.

## III.   Admission of Photographs

The appellant argues the trial court erred in overruling his motion to suppress certain photographs of the deceased.

The photographs marked exhibits 3, 4 and 5 show the body of the deceased lying face down with the gun next to the corpse. The appellant concedes in his brief they do have some probative value because they show the relative positions of the body and the gun

as well as the similarity of the gun at the scene to the one offered in evidence at his trial. The record reflects they were actually offered for that purpose at the trial, and no error has been shown in their admittance.

The appellant's argument against the admission of exhibits 6 and 7 as inflammatory and highly prejudicial is equally nonconvincing. Both black and white photographs depicted the deceased's gunshot wound at close range. The record reflects they were identified by the police photographer who took them and used by Dr. Charles Hinshaw, who performed the autopsy, in his direct testimony.

As a general rule photographs are not rendered inadmissible merely because they are shocking or gruesome if they are relevant and material to the matters at issue. (*State v. Martinez,* 223 Kan. 536, 537, 575 P.2d 30 [1978]; *State v. Mantz,* 222 Kan. 453, 459, 565 P.2d 612 [1977]; and *State v. Childers,* 222 Kan. 32, Syl. 10, 563 P.2d 999 [1977].) After viewing these photographs we conclude they are neither shocking nor gruesome and were highly relevant to show the location and severity of the wound.

Finally, the appellant objects to exhibit 8 as irrelevant and immaterial to any issue in the case. The color photograph depicts the deceased at a family gathering three months before she was killed. It was offered to show the severity of the wound and Sharon's appearance prior to her death and no prejudicial error is found to exist.

### IV. Suppression of Statements

The appellant complains the trial court erred in overruling his motion to suppress certain statements made by him as an incident to his arrest. He argues the statements were made shortly after his arrest when he was half asleep and unnerved.

Officer William C. Naholnik testified while driving to the police station, after the *Miranda* rights were explained, he and the appellant engaged in casual conversation. Suddenly the appellant blurted various incriminating statements about the deceased such as "You should have seen my old lady after I blew her head off with a shotgun." The appellant also stated he had shot his wife in front of his children; he needed time to think; and Lois Baxley did not participate in the commission of the crime.

We have often said uncoerced statements made to a police officer by a defendant who has been given warning as to his

constitutional rights are admissible as evidence at his trial. (*State v. Cook,* 224 Kan. 132, 578 P.2d 257 [1978]; and *State v. Coe,* 223 Kan. 153, 161, 574 P.2d 929 [1977] and cases cited therein.) The statements were voluntarily given and no error has been shown in their admission by the trial court.

## V.  Opinion Testimony

The appellant argues the trial court erred in permitting Dr. Charles Hinshaw, the pathologist, to state his opinion concerning the range at which the gun was held from the victim's head when the appellant fired it. Dr. Hinshaw testified that the barrel of the gun had to be "against the skin or very close" to it. He stated he was no expert in ballistics.

K.S.A. 60-456(*a*) provides:

"If the witness is not testifying as an expert his or her testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (*a*) may be rationally based on the perception of the witness and (*b*) are helpful to a clearer understanding of his or her testimony."

Thus, whether a witness is qualified to give opinion testimony is to be determined by the trial court in the exercise of its power of discretion. (*State v. Hernandez,* 222 Kan. 175, 177, 563 P.2d 474 [1977]; *State v. Amodei,* 222 Kan. 140, 146, 563 P.2d 440 [1977]; and *State v. Henson,* 221 Kan. 635, Syl. 7, 562 P.2d 51 [1977].) When the testimony sought requires proper foundation and knowledge to express an opinion, and it is not shown the witness had such knowledge, the opinion testimony is so conjectural as to lack probative value and may be excluded. (See *State v. Duncan,* 221 Kan. 714, 723, 562 P.2d 84 [1977] and cases cited therein.)

Dr. Hinshaw was allowed to give his opinion as to the range at which the gun was held to the victim's head on two separate occasions. The appellant failed to object on the first occasion. Thereafter, Dr. Hinshaw stated that based upon similar case histories, books he had read and experience with gunshot wounds at close range infliction, he felt qualified to express an opinion regarding the effect of shotgun blasts against the human body. His testimony indicated no evidence of flame burn or satellite lesions from the shot. Based upon his autopsy and the nature of the wound as well as his previous experience we hold Dr. Hinshaw was qualified to give his opinion about the distance of the gun from the skin.

The appellant also asserts the trial court erred in refusing to

allow Dr. Walter Menninger to testify as to the appellant's ability to plan, to premeditate and to form the specific intent to murder his wife. Dr. Menninger examined the appellant at the state's request pursuant to a court order directing psychiatric examination after the appellant served notice of intent to assert an insanity defense. This defense was withdrawn at the commencement of the trial. No abuse of the trial court's power of discretion occurred here. Dr. Menninger was allowed to testify that the appellant had a personality disorder and suffered from impulsive behavior. The disputed testimony was immaterial to his case because it concerned the question of insanity which the appellant had voluntarily withdrawn as a defense before the trial.

## VI.   Instructions

The appellant challenges the sufficiency of numerous instructions. Specifically, he contends the trial court's instruction on premeditation unduly emphasized the evidence of use of a deadly weapon.

The trial court instructed in 11-A:

"The use of a deadly weapon is not of itself alone sufficient to infer premeditation. If, however, you find from the evidence that the defendant used a deadly weapon in the commission of the alleged offense, you may take that fact into consideration in determining the element of premeditation."

This instruction is based upon language approved in *State v. Buie,* 223 Kan. 594, 597, 575 P.2d 555 (1978); *State v. Henson,* 221 Kan. 635, 562 P.2d 51 (1977); and *State v. Hamilton,* 216 Kan. 559, 534 P.2d 226 (1975). Here the trial court gave PIK, Criminal instruction § 56.04(b) (Revised) which does not include reference to the use of a deadly weapon. While it is better practice for trial courts to confine their instructions to PIK, no error is found to exist on this point.

The appellant complains of instructions given on homicide definitions and burden of proof. The instructions followed PIK, Criminal, § 56.04 (Revised) and PIK, Criminal, § 52.02 verbatim and were not erroneous.

The appellant also objects to the instruction of felony murder using aggravated burglary as the felony with the intent to commit aggravated assault on Grace Kruelhous. The information in the case at bar charged the appellant with first-degree premeditated murder. The jury returned a verdict of first-degree murder and the journal entry indicates the same. Both parties conceded at the

hearing on the motion for a new trial that the first-degree murder conviction was based upon aggravated burglary in application of the felony-murder rule. The appellant now contends he was wholly without notice for his defense and the evidence at trial was insufficient to charge the jury with felony murder.

Our court has held an information in the ordinary form charging that a killing was done with malice aforethought, deliberation and premeditation is sufficient to sustain a conviction of murder in the first degree committed in the perpetration of a robbery or burglary. (*State v. Turner,* 193 Kan. 189, 392 P.2d 863 [1964].) Therefore, the fact that felony murder was not charged in the information does not preclude an instruction where evidence supports the instruction.

Of course, in Kansas, the felony-murder doctrine is not applicable in cases of felonious assault resulting in death because the assault *merges* into the homicide. (*State v. Clark,* 204 Kan. 38, 460 P.2d 586 [1969].) Thus, aggravated assault may *not* be the underlying felony itself. (*State v. Clark,* supra at 44; see also *State v. Rueckert,* 221 Kan. 727, 733, 561 P.2d 850 [1977]; and *State v. Goodseal,* 220 Kan. 487, 493, 553 P.2d 279 [1976].) Here, however, aggravated burglary was the underlying felony, but it was predicated upon aggravated assault.

Should the merger doctrine for assault cases be extended to limit the felony-murder instruction in burglary cases in which the burglary is based upon an assault? We think not.

While our court has never examined this issue, several states confronted with the question have held that burglary based upon the crime of assault can properly serve as the predicate for a felony-murder conviction. (*Blango v. United States,* 373 A.2d 885 [D.C. 1977]; *State v. Miller,* 110 Ariz. 489, 520 P.2d 1113 [1974]; *People v. Miller,* 32 N.Y.2d 157, 297 N.E.2d 85, 344 N.Y.S.2d 342 [1973]; and *State v. Tremblay,* 4 Ore. App. 512, 479 P.2d 507 [1971]. See also Comment, *The Merger Doctrine As A Limitation On The Felony-Murder Rule: A Balance Of Criminal Law Principles,* 13 Wake Forest L. Rev. 369, 388-94 [1977].)

We find the reasoning in *People v. Miller,* supra, persuasive. The court states:

". . . [P]ersons within domiciles are in greater peril from those entering the domicile with criminal intent, than persons on the street who are being subjected to the same criminal intent. Thus, the burglary statutes prescribe greater punishment for a criminal act committed within the domicile than for the same act

committed on the street. Where, as here, the criminal act underlying the burglary is an assault with a dangerous weapon, the likelihood that the assault will culminate in a homicide is significantly increased by the situs of the assault. When the assault takes place within the domicile, the victim may be more likely to resist the assault; the victim is also less likely to be able to avoid the consequences of the assault, since his paths of retreat and escape may be barred or severely restricted by furniture, walls and other obstructions incidental to buildings. Further, it is also more likely that when the assault occurs in the victim's domicile, there will be present family or close friends who will come to the victim's aid and be killed. . . ." (pp. 160-161).

Here the evidence supports a finding that aggravated burglary was complete upon the unlawful entry by the appellant into the home of Grace Kruelhous with the prerequisite intent to commit a felony therein (aggravated assault). Thereafter the homicide was committed in the course of the burglary. Accordingly, we reject the holding of *People v. Wilson,* 1 Cal. 3d 431, 462 P.2d 22, 82 Cal. Rptr. 494 (1969) and hold the merger doctrine does not apply in felony-murder cases where an aggravated burglary is based upon an aggravated assault.

Was the appellant without notice for his defense on felony murder? During the trial the prosecuting attorney at the close of the state's case specifically and unequivocally advised the court the state was going to withdraw its request for an instruction on felony murder. The appellant, on that assumption, then presented his evidence and rested. At the conclusion of the evidence the trial court, at the request of the prosecuting attorney, instructed the jury on felony murder, and instructed the jury that it could find the appellant guilty of felony murder. This was prejudicial to the appellant in the presentation of his evidence.

Finally, the appellant asserts it was error for the trial court to refuse an instruction on involuntary manslaughter based upon criminal trespass as a lesser included offense of felony murder. As a general rule the trial court is required to give a full range of lesser included offense instructions. When murder is committed during the commission of a felony the rule requiring instructions on lesser included offenses does not apply. The felonious conduct is held tantamount to the elements of deliberation and premeditation which are otherwise required for first-degree murder. (*State v. Rueckert,* supra at 731.)

An exception to this rule exists when the evidence of the underlying felony is weak and inconclusive. (*State v. Sullivan & Sullivan,* 224 Kan. 110, 578 P.2d 1108 [1978] and cases cited

therein.) Here the evidence of the underlying felony (aggravated burglary) was inconclusive. The appellant was going to his mother-in-law's home where his wife Sharon was staying. He went for the purpose of talking with Sharon. The jury might have found from the evidence that the appellant committed a criminal trespass upon opening the front door and entering the home (K.S.A. 21-3721). On the evidence the shooting of Sharon by the appellant may have been a malicious and willful act or, according to the testimony of the defendant (that his hand slipped off the hammer), it could have been accidental. A jury question is presented. Accordingly, the trial court erred in failing to give an instruction on involuntary manslaughter which is a lesser included offense.

### VII.  Sentencing

The appellant contends it was error for the trial court to render judgment and sentence immediately following the verdict over his objection. He requested a pre-sentence report and time to file and argue post-trial motions.

K.S.A. 22-3424(3) provides:

"If the verdict or finding is guilty, judgment shall be rendered and sentence pronounced *without unreasonable delay, allowing adequate time* for the filing and disposition of post-trial motions and for completion of such pre-sentence investigation as the court *may* require." (Emphasis added.)

The discussion of this statute in Vernon's Kansas Statutes Annotated, Code of Criminal Procedure, § 22-3424 states:

".  .  .  Subsection (3) provides more flexibility in fixing the time for sentencing  .  .  .  The standard 'without unreasonable delay' is found in Rule 32 (1), F.R. Cr. P.  .  .  ." (p. 332.)

Unlike federal law, the filing of a pre-sentence report is discretionary in Kansas. The defendant may be sentenced immediately after a plea of guilty or a conviction.

Pre-sentence reports are valuable tools and should be given close attention by sentencing judges so that offenders may receive fair sentences based upon the best available information rather than inadequate guesswork. (*State v. James,* 223 Kan. 107, 113, 574 P.2d 181 [1977].) While no error exists in the case before us, the better practice would be for trial courts to consider the pre-sentence report in their determinations.

The appellant further asserts the trial court erred in considering evidence of a thirteen-year-old grand larceny conviction to en-

hance his sentence to two consecutive life sentences. The appellant does not challenge the sentence on appeal.

As a general rule a sentence, within the statutory limits, will not be set aside on appeal unless it is so arbitrary and unreasonable it constitutes an abuse of judicial discretion. (*State v. Coe,* supra at 167.) Moreover, the exercise of discretion by a prosecuting attorney in seeking to invoke the provisions of the Habitual Criminal Act, absent a showing of willful, designed or deliberate discrimination, is not a violation of the due process or equal protection provisions of the Fourteenth Amendment to the Constitution. (*State v. Sully,* 219 Kan. 222, Syl. 10, 547 P.2d 344 [1976]; and *State v. Troy,* 215 Kan. 369, 524 P.2d 1121 [1974].) Remoteness in time does not render the sentence suspect. (*State v. Sully,* supra at 230, where the convictions were ten and fifteen years old; and *Baker v. State,* 213 Kan. 874, 518 P.2d 537 [1974], where a 32-year-old conviction was used.) Thus, the appellant's argument on this point has no merit.

## VIII. New Trial

Finally, the appellant contends the trial court erred in overruling his motion for a new trial. During the trial Jack Shearer, a nurse-anesthetist, testified as to the range at which the appellant held the gun from the victim's head based upon his experience with similar shotgun wounds. He stated he gained part of this experience from his service in the army for one year in Viet Nam. Subsequently, defense counsel discovered Mr. Shearer had never served in Viet Nam; instead, he served as a nurse-anesthetist at Fort Leonard Wood, Missouri, where he treated many Viet Nam veterans.

It is well-established law new trials are not granted on the basis of newly discovered evidence which tends merely to impeach or discredit the testimony of a witness. (*Davis v. State,* 210 Kan. 709, 716-17, 504 P.2d 617 [1972]; *State v. Theus,* 207 Kan. 571, 485 P.2d 1327 [1971]; and *State v. Watson,* 204 Kan. 681, 466 P.2d 296 [1970].) Nor is recanting testimony involving perjury looked upon with favor in the granting of a new trial. (See *State v. Watie, Heard and Heard,* 223 Kan. 337, 347, 574 P.2d 1368 [1977] and cases cited therein; Annot., 38 A.L.R.3d 812 [1971].) No prejudice resulted from the testimony here. At the hearing on the motion for the new trial the witness explained his confusion in the original questioning and apologized to the court. He was qualified to state

an opinion based upon his observations of wounded men, and the trial court did not abuse the exercise of its power of discretion in denying the motion for new trial on this ground.

The judgment of the lower court is reversed with directions to grant a new trial.

PRAGER, J., concurring and dissenting: I concur in the reversal of the case and the granting of a new trial. I respectfully dissent from syllabus ¶ 3 and the corresponding portions of the opinion. I cannot agree with the majority that the felony-murder rule is applicable under the circumstances of this case. Essentially, we have here a domestic quarrel, aggravated by alcohol abuse. It is clear from the record that the defendant, Roger D. Foy, and his deceased wife, Sharon, had had a stormy marital relationship. It appears that some of their marital difficulties may have been the result of interference by Sharon's mother. On the evening of the homicide, defendant Foy went to the home of his mother-in-law for the purpose of talking with Sharon. It is undisputed that he carried with him a gun which he admitted he intended to use to scare away his mother-in-law, if she again interfered. The defendant simply opened the front door of the house and walked in. He found his mother-in-law and Sharon watching television. It appears that Sharon told the defendant to leave, since he was not supposed to be "in mamma's house." She threatened to call the law if he did not leave. At this point the evidence is somewhat conflicting and could reasonably lead to one of several conclusions. The shooting of Sharon by the defendant may have been a malicious and willful act or, according to the testimony of the defendant, it could have been accidental. The majority opinion holds that the felony-murder doctrine could be applicable in this case since the defendant may have committed an aggravated burglary if the jury should find he entered the house without permission, having an intent to commit an aggravated assault.

In my judgment, an instruction on the felony-murder doctrine was not warranted in this case. In *State v. Wilson*, 220 Kan. 341, 552 P.2d 931 (1976), we stated that the purpose of the felony-murder rule is to relieve the state of the burden of proving premeditation and malice when the victim's death is caused by the killer while he is committing another felony. The rationale of the rule was said to be that the killer's malignant purpose is established by proof of intent to commit the collateral felony. The

application of the felony-murder rule is subject to the limitation that the elements constituting the other felony must be so distinct from that of the homicide so as not to be ingredients of the homicide itself. In *State v. Fisher*, 120 Kan. 226, 243 Pac. 291 (1926), this court held that an aggravated assault which resulted in a homicide could not be utilized as an independent felony to invoke the felony-murder doctrine. The rationale of *Fisher* is applicable in this case. Here the aggravated burglary, the independent felony required for invocation of the felony-murder rule, had as an essential element, the intent to commit an aggravated assault. The same intent is then used as an element of the homicide itself. I, of course, agree that in a proper case a burglary may be used to invoke the felony-murder rule. I cannot agree that an intent to commit the same assault may be used both as an element of the burglary and also as an element of the homicide so as to make the felony-murder rule applicable. For a case reaching this conclusion see *People v. Wilson*, 1 Cal. 3d 431, 462 P.2d 22, 82 Cal. Rptr. 494 (1969).

I have also concluded that the case must be reversed because an instruction given by the trial court permitted the jury to convict the defendant of murder in the first degree *if the killing occurred during the perpetration of an aggravated assault.* This instruction is directly contrary to the rule recognized in syllabus ¶ 3 of the majority opinion that the felony-murder doctrine is not applicable in cases of felonious assault resulting in death, because the assault merges into the homicide. I quote verbatim instruction 2-A given by the trial court:

## "No. 2-A

"The defendant is charged with the crime of murder in the first degree, during the perpetration of a felony. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1.   That the defendant killed Sharon Foy;

"2.   That such killing was done in the commission of Aggravated burglary, a felony, and,

"3.   That this act occurred on or about the 20th day of January 1976 in Ford County, Kansas.

"In order for the State to prove the defendant guilty of murder in the first degree committed during the perpetration of the felony of aggravated burglary, each of the following elements of aggravated burglary must be proved:

"1.   That the defendant knowingly entered a building at 1006 5th Ave.

"2.   That the defendant did so without authority;

"3.   That the defendant had the intent to commit a felony therein, to-wit, either the murder of Grace Kruelhaus or the aggravated assault of Grace Kruelhaus

"4. At the time there was a human being in 1006 5th Ave., and,

"5. That this act occurred on or about the 20th day of January 1976 in Ford County, Kansas

"*In order for the State to prove the defendant guilty of murder in the first degree committed during the perpetration of the felony of aggravated assault, each of the following elements of Aggravated Assault must be proved:*

"1. That the defendant intentionally threatened or attempted to do bodily harm to Grace Kruelhous.

"2. That he had apparent ability to cause such bodily harm;

"3. That defendant's conduct resulted in Grace Kruelhous being in immediate apprehension of bodily harm;

"4. (a) That the defendant used a deadly weapon, or,

(b) That the defendant did so with intent to commit Murder, a felony; and

"5. That this act occurred on or about the 20th day of January 1976 in Ford County, Kansas.

"No bodily contact is necessary." (Emphasis supplied.)

The final paragraph of the instruction clearly permits the jury to find the defendant guilty of murder in the first degree if the killing was committed during the perpetration of the felony of aggravated assault. That portion of the instruction can mean nothing else. It was prejudicial error to give such an instruction—especially since counsel have agreed that the jury found the defendant guilty of felony murder as defined by instruction 2-A.

MILLER, J., joins in the foregoing concurring and dissenting opinion.