NOT DESIGNATED FOR PUBLICATION

No. 124,422

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HEATHER YVONNE STEBBINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed February 17, 2023. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Michael R. Serra*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM: A jury convicted Heather Yvonne Stebbins of attempted aggravated robbery and criminal possession of a weapon by a convicted felon. Before sentencing, Stebbins moved for a new trial based on the discovery of new evidence, as the witness who testified at trial that Stebbins had used a weapon later said she had not. But the district court denied that motion after an evidentiary hearing. Stebbins appeals the denial of her motion for a new trial. After review, we affirm the district court's decision.

1

*Factual and Procedural Background*

We first review the evidence leading to Stebbins' convictions. In February 2020, Saline County law enforcement officers spoke with Stephanie Guntz and Kevin Fernandez, who said they were victims of an armed robbery. According to Guntz and Fernandez, they were traveling to Florida on a Greyhound bus when they were kicked off in Topeka, Kansas. Guntz telephoned their friend "Charlie," who lived in the area, and asked her for a ride to Salina so they could catch another bus at its Greyhound station.

Charlie, in a car with her friend Darren Jackson, picked up Guntz and Fernandez. On the way to Salina, Charlie took a detour allegedly to visit her son's grave. But while out in the country, Charlie pulled over and stopped on a dirt road and another car pulled up behind them. Two men and one woman exited the rear vehicle, pulled Guntz and Fernandez out of the front vehicle at gunpoint, and stole $3,600 in cash from their bags. Guntz and Fernandez did not tell officers that the robbers also stole heroin from them.

Neither Guntz nor Fernandez could describe the assailants in much detail, but Guntz described the woman as white and short with long, dark hair, and she described the gun pointed at her as black and silver, possibly a 9mm handgun. Saline County law enforcement suspected that "Charlie" was Kinnsley Mathews. They knew Mathews went by the nickname "Charlie" and had lost a child in 2019. During a later interview, Fernandez identified Mathews as "Charlie" from a photo lineup.

Law enforcement officers interviewed Mathews in March 2020. During that interview, Mathews said the following. Guntz and Fernandez called her for a ride after they had been kicked off a Greyhound bus in Topeka. Mathews asked Jackson for help because he was the only person she knew that had a vehicle available that day. After Mathews and Jackson picked up Guntz and Fernandez, Jackson asked them about what belongings they had with them.

Mathews, who was driving, pulled the car to the side of the road and another vehicle driven by Jesse Rick soon pulled up behind them; Stebbins was a passenger in that car. Mathews saw Stebbins and Rick brandish firearms and order Guntz and Fernandez to get out. Jackson got out as well and participated in the aggravated robbery. Jackson then ordered Mathews to drive away, leaving Guntz and Fernandez on the side of the dirt road. Mathews did so because Jackson threatened to hurt her if she did not comply. Mathews recognized Stebbins because of a previous encounter with her and could identify Stebbins by her facial tattoo.

Jackson and Stebbins were detained by officers but denied any knowledge of the robbery.

Rick was also detained, but he gave a statement to law enforcement. He said Mathews and Jackson had traveled to Topeka to steal heroin from Guntz and Fernandez. On the way back to Salina, Mathews planned to stage a fight with Jackson to create a diversion so that Rick and Stebbins could take the heroin from Guntz and Fernandez. Rick was with Stebbins when Jackson called to tell them their location. Rick did not know whether Jackson and Stebbins got anything but heroin from the robbery. Rick said there was no "gun play" during the robbery, but he was unsure of what had occurred before he arrived.

The State charged Stebbins with two counts of aggravated robbery for the theft of the currency from Guntz and Fernandez and one count of criminal possession of a firearm by a convicted felon.

*The trial*

At trial, the State presented testimony from Mathews and Rick. The State advised that Rick had agreed to testify for the State in exchange for a favorable plea deal and

3

without any immunity. Stebbins' counsel objected to Rick's late endorsement as a witness, arguing that he had changed his account of events. When Rick first spoke with officers, he denied that firearms had been used in the robbery. But contrary to that statement, Rick now planned to testify that firearms had been used in the robbery.

Over Stebbins' objection, Rick was endorsed as a witness and testified at trial. Rick testified that he and Stebbins had traveled to the area of the cemetery where Mathews' child was buried. While there, he got a text from Mathews or Jackson that the man in the back seat of that car had the heroin. Rick approached the driver's side rear door of Mathews' vehicle with his gun drawn while Stebbins approached the passenger rear door with her gun drawn. Rick believed the stolen heroin was given to Mathews. Once back in Salina, Mathews, Jackson, Stebbins, Stebbins' boyfriend, and Rick split up the heroin.

Rick testified that his testimony was in exchange for a favorable plea bargain, but that the State had not coerced him to testify and that his testimony was truthful. On cross-examination, Rick admitted that he had offered information to officers to try to stay out of jail, that he had first told officers no firearms were involved in the robbery, and that the robbery was a set up between Mathews and Jackson.

Deputy Craig Norris of the Saline County Sheriff's Office testified as to events after the robbery. When he conducted a traffic stop of a vehicle in which Stebbins was a passenger, after she was suspected of the robbery, a Bersa Thunder .380 semiautomatic handgun and five rounds of ammunition were found inside her purse underneath her seat. She was then arrested.

The State also presented evidence from a cell phone in Rick's apartment showing contacts with "Heather" and "Darrin" on the day of the robbery. Rick later identified this

phone as his. That phone's location data also showed the phone had been taken from Rick's apartment to the general location of the area where the robbery occurred.

Similarly, the State also introduced data from Jackson's cell phone. That evidence showed multiple calls to Stebbins, Rick, and Mathews on the date of the robbery. Jackson's cell phone records also showed he had traveled from Salina, to Topeka, and then back to Salina that day. And after the robbery, Jackson sent messages advertising heroin for sale.

Mathews also testified. She said she immediately recognized Rick and Stebbins as they exited the car that had pulled up behind hers. She then saw Rick and Stebbins approaching her car with "guns drawn." When shown the gun seized from Stebbins, Mathews said it looked like the gun Stebbins had used in the robbery, but she could not be certain it was the same one. Drugs and money were stolen from Guntz and Fernandez, and when she returned to Rick's apartment she saw Stebbins, Rick, and Jackson weigh and divide the heroin.

The jury ultimately convicted Stebbins of one count of attempted aggravated robbery (a lesser included offense of her original charge of aggravated robbery) and criminal possession of a firearm by a convicted felon. The jury acquitted her of a second count of aggravated robbery.

*Posttrial events*

After trial, Stebbins moved for a new trial based on a Facebook message Rick sent to Marcus Vineyard after Stebbins' trial. That message said: "[T]he county attorney told me if I don't change my story and that guns were involved then [I'm] not getting any deal and I have to go to trial." Stebbins argued this proved Rick perjured himself during trial, warranting a new trial. The State objected to Stebbins' motion.

5

The district court held an evidentiary hearing on Stebbins' motion. When the defense called Rick to testify, he confirmed that

- when he was arrested, he had offered to provide information to law enforcement to stay out of jail;
- he had initially told police that no firearms were used in the robbery;
- he had later told the prosecutor during plea negotiations that he and Stebbins had used firearms; and
- he had sent the Facebook message to Vineyard "within days" of the trial.

The Facebook message was admitted without objection.

When Stebbins' counsel asked Rick if he had been told he had to testify that guns were involved in the robbery to receive a favorable plea agreement, Rick responded he was told, "I have to tell the truth, is what I'm told—was told." During cross-examination, Rick maintained that his statements during Stebbins' trial were truthful and were not the product of coercion by the State. When asked why he sent the Facebook message to Vineyard, Rick replied, "To ease the blow to my reputation." Rick confirmed that the Facebook message was not true and that he had sent it so Vineyard would not think that he was a "rat." Rick also testified that he had not discussed with the prosecutor what he would say at the hearing on the motion for a new trial.

Stebbins also testified. She claimed:

- Shortly before the hearing, she had met with Rick at his request;
- Rick then told her his message to Vineyard was true and he was just trying to make things right;
- a friend heard that conversation but was not called to testify;

- Rick was "petrified" that his plea agreement would be revoked;
- the prosecution had pressured Rick to say firearms were used; and
- Rick had spoken with the prosecution after Stebbins moved for a new trial.

*The district court's decision*

After considering the evidence at trial and at the hearing on the motion, the district court denied Stebbins' motion for a new trial. It found:

- Rick had been questioned extensively during trial by both counsel about his history of statements and his negotiations with the State;
- the jury heard about the inconsistencies between Rick's initial statements to law enforcement and his trial testimony, as well as the last-minute timing of his plea agreement and the circumstances surrounding it; and
- the jury could fairly assess Rick's credibility—balancing his plea agreement and his testimony—based on the evidence presented at trial.

The district court elaborated on Rick's motive to change his story and on the credibility of his testimony:

> "Mr. Rick's [*sic*] testified here this morning that he testified truthfully at trial. The county attorney had not told him that he had to say guns were involved to get his deal. That he was told to tell the truth, and that's what he testified to at trial, was the agreement with [the prosecutor's] office.
> "Also, as he testified, there was plenty of motivation for him to try to say something else to his friends after he testified at trial. He had been labeled a rat. And in the world Mr. Rick operates in, that's not a label you want. He was trying to repair his reputation. The message wasn't true. And the Court finds that testimony totally credible. This Court's going to find that the message that was given by Mr. Rick to Mr. Vineyard

7

was, in fact, just that: An attempt to repair his reputation that he did testify truthfully at trial."

The district court also noted that Stebbins' convictions were not solely the product of Rick's testimony. Rather, "[t]he phone records, the phone data, the later divvying up of the drug[s], the firearm found under Ms. Stebbins seat when she was arrested, [and] the video of the defendant with her conversation from the jail regarding weapons being seized" all contributed to her convictions.

The district court then sentenced Stebbins to a controlling sentence of 120 months' imprisonment, denying her requests for downward durational and dispositional departures.

Stebbins now appeals the district court's denial of her motion for a new trial.

*Did the District Court Err in Denying Stebbins' Motion for a New Trial?*

On appeal, Stebbins argues the district court abused its discretion by denying her motion for a new trial based on new evidence. She argues that Rick's posttrial Facebook message was unavailable at trial and gives rise to a reasonable probability that a new jury would render a different verdict if presented with this evidence. The State argues that the district court did not err in denying Stebbins' motion for two reasons. First, the district court is in the best position to assess the credibility of witnesses, and it found the Facebook message was not credible. Second, even if the message were credible, it is merely impeachment or credibility evidence, which is not grounds for a new trial.

We review an order denying a motion for a new trial based on newly discovered evidence for an abuse of discretion. A court abuses its discretion if there is an error of law or fact or the action is arbitrary, fanciful, or unreasonable. *State v. Ashley*, 306 Kan. 642,

650, 396 P.3d 92 (2017). "Under the abuse of discretion standard, if a reasonable person could agree with the district court's decision, it will not be disturbed on appeal." *State v. Moncla*, 273 Kan. 856, 861, 46 P.3d 1162 (2002). As the party asserting the error, Stebbins bears the burden to show the district court abused its discretion in denying her motion for a new trial. See *Ashley*, 306 Kan. at 650.

A successful motion for a new trial must establish two factors: "(1) that the newly proffered evidence could not have been produced at trial with reasonable diligence; and (2) that the newly discovered evidence is of such materiality that it would be likely to produce a different result upon retrial." 306 Kan. at 650.

As to the first factor, the district court found that the Facebook message was newly discovered evidence. We agree—the record shows that the Facebook message was not created or sent until after trial, so it could not have been produced at trial with reasonable diligence.

The parties focus their arguments on the second factor—whether the Facebook message was so material that it would be likely to produce a different verdict. Newly discovered evidence is considered material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." See *State v. Warrior*, 294 Kan. 484, Syl. ¶ 11, 277 P.3d 1111 (2012). When determining the materiality of the new evidence, the district court judge "must assess the credibility of the newly proffered evidence, and the appellate court will not reassess the district judge's determination of credibility from such a hearing." *Ashley*, 306 Kan. at 650 (citing *State v. Warren*, 302 Kan. 601, 615-16, 356 P.3d 396 [2015]).

"[N]ewly discovered evidence that merely tends to impeach or discredit the testimony of a witness is ordinarily not grounds for granting a new trial. *State v. Richard*, 235 Kan. 355, 363, 681 P.2d 612 (1984); *State v. Foy*, 224 Kan. 558, 569, 582 P.2d 281

9

(1978)." *Ashley*, 306 Kan. at 650. And "[e]ven when the evidence tends to impeach the testimony of a witness, the presence or absence of corroborating evidence is an additional factor to consider in determining whether newly discovered evidence is so material that it is likely to produce a different result upon retrial." 306 Kan. at 650.

Several reasons convince us that the district court did not abuse its discretion in denying the motion for new trial. First, the district court determined that the newly discovered evidence was not credible enough to warrant a new trial. Rick testified that the Facebook message was false, and the district court explicitly found Rick's testimony and explanation of its falsity to be credible. This finding stemmed from the court's observations of Rick's testimony at trial and at the motion's evidentiary hearing. In explaining its credibility determination, the district court stated: "[Rick] had been labeled a rat. And in the world Mr. Rick operates in, that's not a label you want. He was trying to repair his reputation. The message wasn't true. And the Court finds that testimony totally credible." This court will not reassess the district judge's determination of credibility from the evidentiary hearing. *Warren*, 302 Kan. at 615-16; see *State v. Ayadi*, 16 Kan. App. 2d 596, 602, 830 P.2d 1210 (1991) (holding that credibility of newly discovered evidence offered in support of motion for new trial is for district court's determination).

Second, the only value of the Facebook message is to impeach or discredit Rick's testimony, yet that is generally not grounds for a new trial. See *Ashley*, 306 Kan. at 650 ("This court has held that newly discovered evidence that merely tends to impeach or discredit the testimony of a witness is ordinarily not grounds for granting a new trial."); see also *Richard*, 235 Kan. at 364 ("A new trial is not granted on the basis of newly discovered evidence which merely tends to impeach or discredit the testimony of a witness."). This evidence went straight to Rick's motive, and thus his credibility, in his trial testimony that firearms were involved in the robbery. See *Warren*, 302 Kan. at 616 (stating, "evidence of bias and motive is a valid method of attacking credibility").

10

Third, in determining materiality, we consider any corroborating evidence of the crucial facts. *Ashley*, 306 Kan. at 650.

> "Even when the evidence tends to impeach the testimony of a witness, the presence or absence of corroborating evidence is an additional factor to consider in determining whether newly discovered evidence is so material that it is likely to produce a different result upon retrial. *State v. Rojas-Marceleno*, 295 Kan. 525, 540, 285 P.3d 361 (2012)." 306 Kan. at 650.

We thus consider any corroborating evidence that guns were used in the robbery. Mathews testified that both Rick and Stebbins used firearms during the robbery, and this was consistent with her initial statements to law enforcement. The State also admitted evidence of the phone records, the phone data, the later divvying up of the drugs, the firearm found in Stebbins' purse when she was arrested, and the video of the defendant with her conversation from the jail regarding weapons being seized to corroborate Rick's and Mathews' testimony. Thus, Rick's testimony was not the sole evidence leading to Stebbins' convictions. The corroborating evidence that Stebbins used a firearm lessens the materiality of Rick's Facebook message.

Rick's Facebook message, although newly discovered evidence, is not so material that it would be likely to produce a different result upon retrial. For these reasons, we find no abuse of discretion in the district court's denial of Stebbins' motion for a new trial.

Affirmed.